1

**SETAREH LAW GROUP**
Shaun Setareh, Esq. (SBN 204514)

2
Thomas Segal, Esq. (SBN 222791)
Farrah Grant Esq. (SBN 293898)

3
420 North Camden Drive, Suite 100

4
Beverly Hills, California 90210
Telephone: (310) 888-7771

5
Facsimile: (310) 888-0109
shaun@setarehlaw.com

6
thomas@setarehlaw.com

7
farrah@setarehlaw.com

8
Attorneys for Plaintiff
MARVIN TOLEDO

9

10
**UNITED STATES DISTRICT COURT**

11
**NORTHERN DISTRICT OF CALIFORNIA**

12

13
MARVIN TOLEDO, an individual, on behalf
of himself and all other similarly situated

14
non-exempt current and former employees,

15

16
Plaintiff(s),

17
v.

18
DELTA AIR LINES, INC., a Delaware
corporation; and DOES 1 through 50,

19
inclusive,

20
Defendants.

21

22

23

24

25

26

27

28

CASE No. 3:22-cv-00081-AMO

**NOTICE OF MOTION AND MOTION
FOR PRELIMINARY APPROVAL OF
CLASS ACTION AND PAGA
SETTLEMENT; MEMORANDUM OF
POINTS AND AUTHORITIES;
DECLARATION OF SHAUN SETAREH
IN SUPPORT THEREOF;
DECLARATION OF MIKE MOORE;
{PROPOSED} ORDER**

Date: January 23, 2025
Time: 2:00 p.m.
Courtroom: 10

Action Filed: December 3, 2021

Case No.  3:22-cv-00081-AMO

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1  **TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD**:

2      PLEASE TAKE NOTICE that on January 23, 2025 at 2:00 p.m., or as soon thereafter as

3  the matter may be heard in Courtroom 10 of this Court, located at 450 Golden Gate Avenue, 19th

4  Floor, San Francisco, CA 94102, Plaintiff Marvin Toledo, on behalf of himself and all others

5  similarly situated and the general public ("Plaintiff"), seeks an order that this case be certified as a

6  class action for the purposes of settlement under Federal Rule of Civil Procedure ("Rule") 23, on

7  behalf of a settlement class comprised of Plaintiff and all other persons similarly situated, for an

8  order directing notice to the class, and for a scheduling order setting a Fairness Hearing for final

9  approval of the proposed settlement.

10      This motion is based upon this Notice, the accompanying Memorandum of Points and

11  Authorities, the Declaration of Shaun Setareh, and all documents and arguments in support

12  thereof.

13      Plaintiff requests the following relief:

14      1.      Preliminary approval of the Stipulation of Class Action and Representative Action

15  Settlement and Release, ("Settlement") attached as Exhibit 1 to the Declaration of Shaun Setareh

16  ("Setareh Decl."), and all related notice and other deadlines as set forth in the agreement or as

17  otherwise ordered by the Court subject to the terms and conditions of the agreement so that

18  Plaintiff may then move the Court for Final Approval of the Settlement Agreement;

19      2.      Conditional certification of the Settlement Class as defined in the

20  Settlement;

21      3.      The appointment of Shaun Setareh, Thomas Segal, and Farrah Grant of Setareh

22  Law Group  as Settlement Class Counsel;

23      4.      The appointment of Plaintiff Marvin Toledo as the Class Representative;

24      5.      An Order directing the dissemination of the notice of class action settlement to the

25  Settlement Class, via United States First-Class Mail as proscribed by the Settlement;

26      6.      Appointment of Phoenix Settlement Administration as Settlement Administrator;

27      7.      An Order setting a schedule for the dissemination of notice to the Settlement Class;

28  deadlines for Settlement Class Members to opt-out or object to the Settlement; and for a Fairness

Hearing to address final approval of the Class Action Settlement Agreement following the notice period.

      8.    Any other relief that the Court deems just and equitable under the circumstances.

DATED: November 22, 2024          SETAREH LAW GROUP

                                */s/ Farrah Grant*
                                SHAUN SETAREH
                                THOMAS SEGAL
                                FARRAH GRANT
                                Attorneys for Plaintiff

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY .........................................2

        A.      PLEADINGS AND MATERIAL ALLEGATIONS....................................................2

        B.      DISCOVERY ....................................................................................................4

        C.      THE PARTIES' MEDIATION EFFORTS ...............................................................4

III.    SUMMARY OF SETTLEMENT TERMS ..................................................................5

        A.      MAXIMUM SETTLEMENT AMOUNT, ATTORNEY FEES AND
                COSTS, CLASS REPRESENTATIVE SERVICE AWARD AND PAGA
                ALLOCATION ...................................................................................................5

        B.      CLASS RELEASES AND ALLOCATION ...............................................................5

                1.      PAGA Group ......................................................................................7

        C.      SETTLEMENT ADMINISTRATION AND NOTICE ..............................................7

        D.      DISPOSITION OF UNCASHED CHECKS..............................................................7

IV.     LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS
        ACTION SETTLEMENTS IN THE NORTHERN DISTRICT ...................................8

V.      THE COURT SHOULD PRELIMINARILY APPROVE THE
        SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND
        ADEQUATE" UNDER RULE 23(E) (2) AND THE CHURCHILL FACTORS ...........9

        A.      CLASS COUNSEL AND PLAINTIFF ADEQUATELY REPRESENTED
                THE CLASS.......................................................................................................9

        B.      THE PROPOSAL WAS NEGOTIATED AT ARM'S LENGTH.............................10

        C.      THE RELIEF PROVIDED FOR THE CLASS IS ADEQUATE .............................10

                1.      The Relief for the Claims Are Adequate, Given the Costs, Risks,
                        and Delay of Trial and Appeal .............................................................10

                2.      The Proposed Method of Distributing Relief to the Class is
                        Effective. ...............................................................................................14

                3.      The Proposed Award of Attorney Fees is Fair. ...............................14

        D.      CLASS MEMBERS WILL BE TREATED EQUITABLY RELATIVE TO
                ONE ANOTHER................................................................................................16

VI.     THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE ................................16

        A.      INFORMATION ABOUT THE SETTLEMENT......................................................16

1.        Differences Between the Settlement Class and the Class Proposed in the Complaint. ...........................................................................................16

2.        Differences in the Claims to be Released and the Claims Pled. ...................17

3.        Other Cases Affected by the Settlement. ....................................................17

B.     SETTLEMENT ADMINISTRATION ..................................................................18

C.     NOTICE. ................................................................................................................18

D.     OPT OUTS. ............................................................................................................18

E.     OBJECTIONS. .......................................................................................................19

F.     SERVICE AWARD. ..............................................................................................19

G.     CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS. .................................................................................................19

H.     COMPARABLE OUTCOME. ...............................................................................19

I.     ELECTRONIC VERSIONS. ................................................................................20

J.     OVERLAPPING CASES. .....................................................................................20

**VII. THE PAGA ALLOCATION IS PROPER**..........................................................**20**

**VIII. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS, AND APPOINT PLAINTIFF AND CLASS COUNSEL TO REPRESENT THEM** ............**21**

A.     THE CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR PURPOSES OF SETTLEMENT ................................................................................................21

1.        Standard for Conditional Class Certification Upon Settlement ..................21

2.        Numerosity ................................................................................................21

3.        Adequacy of Representation ......................................................................22

4.        Typicality ..................................................................................................22

5.        Commonality ............................................................................................22

6.        Predominance and Superiority ..................................................................22

**IX. CONCLUSION**........................................................................................................**23**

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3    *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1214 (2008) .................................................. 20

4    *Amaro v. Anaheim Arena Management*, 69 Cal. App. 4th 521, 541 n. 5 (2021) ............................. 7

5    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ......................................................... 21

6    *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012) ........................................... 3

7    *Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 66 n.11 (2008) ..................................................... 14

8    *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004) ................................... 9

9    *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)........................................ 8

10   *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967).. 21

11   *Dilts v. Penske Logistics, LLC*, No. 08-cv-218-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21, 2014)................................................................................................................................. 11

12

13   *Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39, n. 33 (2014) ............................................. 11, 12

14   *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856 (C.D. Cal. 2008)................................................................................. 15

15   *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 489 P.3d 1166 (2021) ........................... 3

16   *Frlekin v. Apple*, 2021 WL 6126961 (N.D. Cal. 2021) ............................................................. 19

17   *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008) ........................................... 21

18   *LDK Solar Secs. Litig.*, No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168, *6 ............................ 13

19   *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)................................... 9

20   *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ...................................... 13

21   *Mitchel Garnett V. Delta Air Lines, Inc.*, Case No. 24stcv01693 (Los Angeles Superior Court) .. 18

22   *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) ................................................... 11

23   *Nachsin v. AOL LLC,* 663 F.3d 1034, 1036 (9th Cir. 2011) ......................................................... 8

24   *Naranjo v. Spectrum Security Services, Inc.,* 17 Cal.5th 1056, 1088 (2024)................................ 13

25   *Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021)...................................................................................................................... 10

26

27   *NVIDIA GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013) ..................................................... 10

*O'Connor v. Uber Technologies, Inc.*, 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016)......................... 20

28

1    *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008) ..................................... 21

2    *Quantum Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997) ................................................ 15

3    *Rajdeep Sandhu V. Delta Air Lines, Inc.*, Case No. 24-Civ-05670 .............................................. 18

4    *Rangel v. PLS Check Cashers of California Inc.*, 899 F.3d 1106 (9th Cir. 2018) ......................... 17

5    *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (2009.).................................................. 13

6    *Saechao v. Landrys, Inc.*, 2016 WL 3227180, *3 (N.D. Cal. June 11, 2016)................................... 20

7    *Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 .................................................. 15

8    *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, *12-13
9         (N.D. Cal. Jun. 17, 2015) ................................................................................................................ 13

10   *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)............................................................... 8

11   *Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-
         54 ...................................................................................................................................................... 13

12   *Viceral v. Mistras Group, Inc.*, 2016 WL5907869 (N.D. Cal. 2016)............................................... 20

13   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .......................................................... 14

14   *Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d at 1301 n.10 ....................................... 15

15   *Wilfred Mccauley V. Delta Air Lines, Inc.*, Case No. 2:23-Cv-07079-Dsf-As (C.D. Cal.) ...... 17, 18

16   **Statutes**

17   Cal. Lab. Code § 2699(e)(2) ............................................................................................................. 21

18   Cal. Lab. Code § 2699(f)(2).............................................................................................................. 20

19   California Bus. & Prof. Code §§ 17200-17208................................................................................... 2

20   Lab. Code §246(l) ............................................................................................................................... 3

21   Labor Code §§ 2699 *et seq*....................................................................................................... 2, 20, 21,

22   Labor Code § 203 .............................................................................................................................. 13

23   Labor Code § 226 .............................................................................................................................. 13

24   Labor Code section 226(e) ................................................................................................................ 12

25   **Rules**

26   Fed. R. Civ. P. 23 .............................................................................................................................. 21

27   Fed. R. Civ. P. 23(a)..................................................................................................................... 21, 22

28

Fed. R. Civ. P. 23(a)(1) .................................................................................................. 21

Fed. R. Civ. P. 23(a)(2) .................................................................................................. 22

Fed. R. Civ. P. 23(a)(3) .................................................................................................. 22

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 22

Fed. R. Civ. P.  23(b) ...................................................................................................... 22

Fed. R. Civ. P. 23(b)(3) ............................................................................................. 21, 23

Fed. R. Civ. P. 23(e) ...................................................................................................... 8, 9

Fed. R. Civ. P. 23(e) (2)(C) .............................................................................................. 10

Fed. R. Civ. P. 23(e)(1)(A) ................................................................................................. 8

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................. 8

Fed. R. Civ. P. 23(e)(2) .................................................................................... 8, 9, 10, 16

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................... 10

Fed. R. Civ. P. 23(e)(3) ......................................................................................... 8, 9, 10

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................. 8

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................... 16

## I.      INTRODUCTION

After years of litigation, this motion seeks preliminary approval of the class action and PAGA settlement of this wage-and-hour action between Plaintiff Marvin Toledo ("Plaintiff"), on behalf of the Class and PAGA Members described below, and Defendant Delta Air Lines, Inc. ("Defendant" or "Delta") (all parties, collectively, are the "Parties").

As the result of arm's-length negotiations following two mediations and a mediator's proposal, the Parties have reached a fair and reasonable class and PAGA settlement of Plaintiff's claims.  Pursuant to the Settlement Agreement ("Agreement"), Plaintiff now requests that the Court enter an order: (1) preliminarily approving the Agreement; (2) certifying the settlement class only for purposes of settlement under the Agreement; (3) appointing Plaintiff as the Class Representative, Setareh Law Group as Class Counsel, and Phoenix as the Settlement Administrator; (4) approving and directing the mailing of the Class Notice and related materials; and (5) scheduling a final approval hearing. The executed Settlement Agreement ("SA") between the Parties is attached as **Exhibit "1"** to the Declaration of Shaun Setareh filed concurrently herewith.

The Agreement provides for a Maximum Settlement Amount of $**12,000,000** (twelve million dollars) ("MSA"). (SA, ¶ 2.28.)  No amount of the MSA shall revert to Defendant. No Class Member will have to submit a claim in order to recover his or her Settlement Share, and checks will be mailed directly to them. (*Id.* ¶ 6.4.3)  After 180 days, any unclaimed funds will be distributed to the University of California Berkeley's Institute for Research on Labor and Employment as a *cy pres* recipient.  (*Id.*, ¶ 6.4.4.)  Defendant estimates that there are 5,000 Class Members who worked approximately 700,000 workweeks.  (*Id.*, ¶ 5.2.2.)

The Net Settlement Amount ("NSA") expected to be paid to Class Members – after all Court-approved deductions from the MSA, *i.e.*, Class Counsel fees of $3,999,960 (33 1/3% of the MSA) and costs of up to $70,000, settlement administration costs estimated to be $29,000, Plaintiff's enhancement award of $10,000, $450,000, which is 75% of the $600,000 earmarked for the PAGA claims – is **$7,441,040.**  (SA, ¶ 2.29.)  The average estimated Settlement Share for each Class Member is **$1,488.20** ($7,441,040 / 5,000).

As discussed below, the Settlement reached here is an excellent result given the claims at

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

issue in this case, the risk that no class would be certified, Defendant's defenses on the merits, and the significant monetary amount obtained for the Class, which compares favorably to similar settlements approved by other courts.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    PLEADINGS AND MATERIAL ALLEGATIONS

Plaintiff Marvin Toledo initiated the Action in the Superior Court of the State of California, County of San Francisco, on December 3, 2021.  Delta subsequently removed the Action to the United States District Court for the Northern District of California, where the Action is currently pending.  Plaintiff has brought the Action on behalf of himself, other allegedly aggrieved employees and as proxy for the State of California, and the following individuals:  all current and former non-exempt employees of Defendant in California from December 3, 2017 to the present.  The Action alleges various wage and hour claims against Defendant, including claims for failure to provide meal/rest periods, failure to pay wages, failure to reimburse business expenses, failure to provide accurate written wage statements, failure to timely pay all final wages, unfair business practices under California Bus. & Prof. Code §§ 17200-17208, and civil penalties under Labor Code §§ 2699 *et seq*.  The Action asserts claims for unpaid wages, statutory penalties, civil penalties under PAGA, restitution, interest, attorneys' fees, and costs.  Prior to filing this Action, Plaintiff sent notice of alleged Labor Code violations to the LWDA pursuant to Labor Code §2699.3(1).  Declaration of Shaun Setareh ("Setareh Decl.") ¶ 4.

At the same time that Plaintiff files his Motion for Preliminary Approval, the Parties plan to file a stipulation with the Court requesting leave for Plaintiff to file the proposed First Amended Complaint, attached as Exhibit 3 to the settlement, which adds certain factual allegations and claims comporting with the scope of the Released Class and PAGA Claims and Plaintiff's LWDA Notice.  SA ¶ 1.1.1.

Plaintiff alleges that while working as an hourly, non-exempt employee, Plaintiff and putative class members were sometimes unable to take 30-minute uninterrupted meal breaks and 10-minute uninterrupted rest breaks in part due to: (1) Defendant's policy of not scheduling breaks as part of each shift; (2) understaffing; (3) imposing so much work on each employee such that it made it

unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) a flawed formal written meal and rest period policy that did not encourage employees to take their breaks.   (*See, generally*, First Amended Complaint, Exh. 3 to Settlement Agreement.) Plaintiff further asserts that Plaintiff and putative class members were not paid for off-the-clock work performed, such as time spent undergoing security checks and performing work after their shift ends, for example when planes arrive late at the end of a shift.  Plaintiff also alleges that Defendant failed to correctly calculate the regular rate of pay to include all applicable remuneration, including non-discretionary bonuses. In addition to overtime, meal premiums are required to be paid at the regular rate of pay. See *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 489 P.3d 1166 (2021). Pursuant to Lab. Code §246(l) (1), sick pay must also be paid at the regular rate of pay. Plaintiff also alleges that Plaintiff and putative class members were not reimbursed for business expenses, such as personal protective equipment and cell phones. Finally, Plaintiff alleged that Defendant maintained a policy or practice that provided for the unlawful forfeiture of vested vacation pay. Setareh Decl. ¶ 13.[1]

Defendant denied all of Plaintiff's allegations.  Defendant states that it had compliant meal and rest policies. Defendant contended that this included an opportunity for meal periods of at least 30 minutes within the first 5 hours of work, and 10-minute rest periods for every 3½ hours of work. Defendant argued that this would defeat Plaintiff's claims because, under *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012), while an employer must provide employees with the opportunity to take meal and rest breaks, it need not ensure that the employees actually do so; an employer satisfies its obligations if it relieves its employees of all duties, relinquishes control over their activities, and permits them a reasonable opportunity to take uninterrupted breaks. They also argued that Plaintiff's rest period claim is also not amenable to class treatment as there are too many individualized issues for the same reasons. Defendant states that any time spent going through security checks was extremely small. Defendant stated that it had policies prohibiting off-the-clock work and

---

[1] Upon review of Delta's vacation policies, Plaintiff's counsel determined that there was no unlawful forfeiture of vacation pay. Setareh Decl. ¶ 13.

required employees to report any off-the-clock work performed. Defendant stated that it properly calculated bonuses into the regular rate of pay. Defendant stated that it reimbursed employees for business expenses as needed and did not require employees to forfeit vacation pay. Finally, Defendant contended that because Plaintiff's wage statement, final pay, and UCL claims are entirely derivative of the other claims in this matter, they too would fail for the same reasons. ¶ 14.

## B.    DISCOVERY

Through substantial and extensive formal and informal discovery, Defendant provided Plaintiff's counsel with company documents and records, data, and written policies reflecting and relating to employees' time worked, rates of pay, workweeks, wages paid, and meal and rest break premiums paid during the Class Period, among other records. Both parties propounded and responded to written discovery requests. Setareh Decl. ¶ 5.

Prior to settlement, Plaintiff obtained class contact information, a sampling of time-keeping and payroll data, and documents regarding Delta's wage and hour policies. *Id.* ¶ 6.

As part of pre-class certification discovery, Plaintiff's counsel interviewed a number of putative class members as percipient witnesses in this action and obtained declarations to be used in support of class certification. *Id.* ¶ 7.

Additionally, Delta deposed Plaintiff Marvin Toledo. *Id.* ¶ 8.

Plaintiff's counsel retained two experts to create damages models. Sridhar Srinivasan was hired for the first mediation and James Toney for the second mediation. *Id.* ¶ 9.

## C.    THE PARTIES' MEDIATION EFFORTS

On May 12, 2023, the Parties attended a full-day mediation conducted by an experienced wage and hour mediator, Michael Dickstein. Although the first mediation did not result in settlement, the Parties continued to engage in settlement discussions after the mediation session ended. Through these settlement discussions, the Parties agreed to participate in a further mediation session. On August 13, 2024, the Parties attended a second full-day mediation conducted by another experienced wage and hour mediator, Jeff Ross. Jeff Ross made a mediator's proposal that resulted in this Settlement. *Id.* ¶¶ 10-12.

//

III.    **SUMMARY OF SETTLEMENT TERMS**

    A.    **MAXIMUM SETTLEMENT AMOUNT, ATTORNEY FEES AND COSTS, CLASS REPRESENTATIVE SERVICE AWARD AND PAGA ALLOCATION**

The Settlement Agreement provides for a Maximum Settlement Amount ("MSA") of $12,000,000. SA ¶ 2.28. That amount is the maximum Defendant will pay unless the Escalation Clause in paragraph 5.2.2 is triggered.

Settlement checks will be mailed directly to class members unless they opt out. SA ¶ 5.6.3. After 180 days, any unclaimed funds will be distributed to the University of California Berkeley's Institute for Research on Labor and Employment as a *cy pres* recipient. *Id.*, § 6.4.4.

Subject to court approval, the following amounts will be deducted from the MSA: Class Counsel fees of $3,999,960 (33 1/3% of the MSA) and costs of up to $70,000, settlement administration costs estimated to be $29,000, Plaintiff's enhancement award of $10,000, $450,000, which is 75% of the $600,000 earmarked for the PAGA claims. The amount left over after these deductions is the Net Settlement Fund. SA ¶ 2.29.

Any amounts for attorney fees, expenses, class representative service payment, or PAGA allocation not approved by the Court will be reallocated to the Net Settlement Fund. SA ¶¶ 5.3, 5.4, 5.7.1.

The PAGA Settlement Fund is 5% of the MSA. SA ¶ 2.34. The PAGA Settlement Fund will be divided with 75% going to the California Labor Workforce Development Agency (LWDA) and 25% going to the PAGA Group Members. *Id.*

    B.    **CLASS RELEASES AND ALLOCATION**

The Class Period is December 3, 2017, through the date of Preliminary Approval. SA ¶ 2.6. The Settlement Class is "all persons employed by Delta in non-exempt positions in California at any time during the Class Period, but excluding flight attendants, pilots, and those persons who participated in Delta's Enhanced Retirement or Voluntary Opt-Out Programs in 2020 and who did not thereafter work for Delta in a non-exempt position in California during the Class Period." SA ¶ 2.3.

//

The Settlement Class Members are releasing the following claims:

[A]ny and all claims, obligations, demands, rights, causes of action, and liabilities that have been asserted or that reasonably could have been asserted in the Complaint, and any amendments thereto, based on the facts and/or allegations pled therein, arising during the Class Period. Released Class Claims include, but are not limited to, claims for the failure to provide compliant meal periods and associated premium pay, failure to provide compliant rest periods and associated premium pay, failure to pay wages, including minimum wages, straight time wages, overtime wages, wages for vested vacation time, sick pay, and premium pay, failure to include all renumeration into the calculation of the regular rate of pay, failure to provide accurate, itemized wage statements, failure to timely pay wages during employment, failure to timely pay wages upon termination of employment, failure to maintain requisite payroll records, failure to reimburse for necessary business-related expenses, unfair or unlawful business practices pursuant to California Business and Professions Code §§ 17200, *et seq.* and 17203, any violation of the California Labor Code, including, but not limited to, California Labor Code sections 201, 202, 203, 204, 210, 215, 216, 218.6, 223, 225, 225.5, 226, 226(a), 226.7, 227.3, 246, 256, 510, 512, 516, 553, 558, 1174, 1174.5, 1175, 1182, 1194, 1194.2, 1197, 1197.1, 1198, 1199, and 2802, any violation of the Industrial Welfare Commission Wage Orders, including, but not limited to, Industrial Welfare Commission Wage Order 9-2001, any violations of local, city, and/or county laws, and/or any violations of the FLSA, including, but not limited to, 29 U.S.C. § 207 and associated regulations, including, but not limited to, 29 C.F.R. §§ 778.108, 778.109, and 778.208.  SA ¶ 2.41.

The PAGA Group Members are releasing the following claims:

[A]ll claims for civil penalties under PAGA that have been asserted or that reasonably could have been asserted in the Complaint, the LWDA Notice, and any amendments thereto, based on the facts and/or allegations pled therein, arising during the PAGA Period.  Released PAGA Claims include, but are not limited to, claims for the failure to provide compliant meal periods and associated premium pay, failure to provide compliant rest periods and associated premium pay, failure to pay wages, including minimum wages, straight time wages, overtime wages, wages for vested vacation time, sick pay, and premium pay, failure to include all renumeration into the calculation of the regular rate of pay, failure to provide compliant wage statements, failure to timely pay wages during employment, failure to timely pay wages upon termination of employment, failure to maintain requisite payroll records, failure to reimburse for necessary business-related expenses, any violation of the California Labor Code based on the aforementioned, including, but not limited to, California Labor Code sections 201, 202, 203, 204, 210, 215, 216, 218.6, 223, 225, 225.5, 226, 226(a), 226.7, 227.3, 246, 256, 510, 512, 516, 553, 558, 1174, 1174.5, 1175, 1182, 1194, 1194.2, 1197, 1197.1, 1198, 1199, and 2802, and any violation of the Industrial Welfare Commission Wage Orders, including, but not limited to, Industrial Welfare Commission Wage Order 9-2001. SA ¶ 2.42.

To determine each Class Member's Individual Settlement Share, the Settlement Administrator will multiply the Net Settlement Amount by a fraction, the numerator of which is the Class Member's individual number of Covered Class Workweeks, and the denominator of which is the total number of Covered Class Workweeks of all Class Members. SA ¶ 5.6.2.

1    For tax reporting purposes, the Settlement allocates 1/3 of each Class Member Settlement

2  Amount as wages and 2/3 as penalties and interest. SA ¶ 5.6.3.

3    **1.    PAGA Group**

4    PAGA Members are all persons employed by Defendant as non-exempt employees in

5  California at any time during the PAGA Period, but excluding flight attendants and pilots. SA ¶

6  2.36. The PAGA Period is the period from June 8, 2020, through the Preliminary Approval Date.

7  SA ¶ 2.37. The PAGA Group will receive 25% of the PAGA Settlement Fund with 75% going to

8  the LWDA. SA ¶ 2.34.

9    The individual settlement shares of PAGA Group Members will be based on their covered

10 Pay Periods worked by the PAGA Group Member during the PAGA Period.  SA ¶ 2.3.5.

11    For tax reporting purposes, the Settlement allocates all PAGA Group payments as penalties

12 SA ¶ 5.7.3.

13    **C.    SETTLEMENT ADMINISTRATION AND NOTICE**

14    No claim form will be required to receive a Settlement Payment. SA ¶ 5.6.1. Each

15 Settlement Class Member and PAGA Group Member will be mailed the Settlement Notice. *Id*. ¶

16 6.2.3. Class Members will have 45 days from the date of mailing the Settlement Notice to submit a

17 Request for Exclusion or to object to the Settlement. *Id.* ¶¶ 2.3.1, 2.3.2, 6.2.8. PAGA Group

18 Members do not have the right to opt out of the PAGA portion of the settlement. *Id*. ¶ 6.2.7. *See*

19 *Amaro v. Anaheim Arena Management*, 69 Cal. App. 4th 521, 541 n. 5 (2021).

20    Class and PAGA Group Members may submit a dispute to the Settlement Administrator

21 regarding their number of Covered Class Workweeks and/or Covered PAGA Pay Periods to which

22 they have been credited shown on their Settlement Notice Document. SA ¶ 6.2.9. Settlement Class

23 Members submitting such a challenge will be required to submit documentation, and the final

24 decision on whether a challenge is accepted will be made by the Settlement Administrator. *Id.*

25    The Settlement Administrator will establish a settlement website. *Id*. ¶ 5.5.1.

26    **D.    DISPOSITION OF UNCASHED CHECKS**

27    Settlement Class Members and PAGA Group Members will have 180 calendar days after

28 mailing to cash their checks. SA ¶ 6.4.3, 6.4.4. Any uncashed funds remaining after the mailing of

the replacement postcards will be sent to the University of California Berkeley's Institute for Research on Labor and Employment. *Id.* The Institute for Research on Labor and Employment is an interdisciplinary institute that connects world-class research with policy to improve workers' lives, communities, and society. https://irle.berkeley.edu/about/. The Institute for Research on Labor and Employment provides in-depth research and policy analysis in areas such as minimum wage policies and labor and employment law. *Id.* "The cy pres remedy must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Nachsin v. AOL LLC,* 663 F.3d 1034, 1036 (9th Cir. 2011). Here, that standard is met— The Institute for Research on Labor and Employment's work benefits the employment of hourly employees in California such as the individuals who make up the class here. Class Counsel does not have a relationship with the proposed cy pres. (Setareh Decl. ¶ 45.)

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS IN THE NORTHERN DISTRICT

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Federal Rule of Civil Procedure 23(e) sets forth a multi-step process for determining whether a proposed class action settlement should be preliminarily approved by the Court. The parties must first "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. Proc. 23(e)(1)(A). Then, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. Proc. 23(e)(1)(B). Federal Rule of Civil Procedure 23(e)(2), in turn, provides:

> "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is ***fair, reasonable, and adequate*** after considering whether:
> > (A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attor'ey's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other."

*Id.* (emphasis added).

The Ninth Circuit Court of Appeals has identified eight factors district courts may also consider in evaluating the fairness and adequacy of a pending settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement ("*Churchill Factors*"). *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004). Factors 1-4 and 6 are duplicative of the Rule 23(e) factors. As to factor 5, as detailed herein there has been extensive discovery. Factor 7 is not applicable, although the LWDA will receive notice of the settlement. Factor 8 will be relevant upon final approval when the class will have had the opportunity to request exclusion or object.

As shown below, the settlement here meets the Rule 23(e) factors, as well as the Northern District's Procedural Guidance on Class Action Settlements

**V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND ADEQUATE" UNDER RULE 23(e)(2) AND THE CHURCHILL FACTORS**

**A.    CLASS COUNSEL AND PLAINTIFF ADEQUATELY REPRESENTED THE CLASS**

Counsel representing the class must be qualified, experienced, and capable of conducting the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, Setareh Law Group is a highly experienced and skilled Plaintiff's class action firm that worked

efficiently and diligently to resolve the case.  Setareh Decl. ¶¶ 4-12, 35-38. Attorneys dedicated

many hours to this case. Setareh Decl. ¶ 39. Setareh Law Group has also incurred over $43,000  in

costs to prosecute the case, including expert costs of over $13,000. Setareh Decl. ¶ 41.

Class representatives are adequate where they have retained experienced counsel and have

actively participated in the litigation. *See e.g. Norton v. LVNV Funding, LLC*, No. 18-CV-05051-

DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021).  Here, class representative Marvin

Toledo is dedicated to this case and spent substantial time and resources assisting Class Counsel

throughout this litigation. Setareh Decl. ¶ 31.

### B.    THE PROPOSAL WAS NEGOTIATED AT ARM'S LENGTH

The proposed Settlement arises after two non-collusive mediations facilitated by renowned

mediators, including a mediator's proposal. *See* Fed. R. Civ. P. 23(e)(2)(B); *see also In re NVIDIA

GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013).

### C.    THE RELIEF PROVIDED FOR THE CLASS IS ADEQUATE

The relief provided for the class is adequate, taking into account:

> (i)    the costs, risks, and delay of trial and appeal;
>
> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)   any agreement required to be identified under Rule 23(e)(3)

*See* Fed. R. Civ. P. 23(e) (2)(C).

#### 1.    The Relief for the Claims Are Adequate, Given the Costs, Risks, and Delay of Trial and Appeal

In addition to disputing the merits of Plaintiff's claims at trial, Defendant intended to

aggressively challenge Plaintiff's case at the certification stage.  Defendant believes that Plaintiff could

not prevail on a certification motion, while Plaintiff believes the case was viable through to a trial.

However, while Plaintiff asserts that this is a viable case for trial, Plaintiff realizes that there are always

significant risks associated with certification and trials, and those risks cannot be eliminated in this

case. The risks associated with this matter include, but are not limited to, the following:

(i)       The risk that Plaintiff would not be able to prove liability for alleged failure to provide compliant meal periods and rest breaks; or that to establish liability for the failure to provide compliant meal periods and rest breaks would require an individualized inquiry that would prevent these issues from being resolved on a class and/or collective basis.  For example, Plaintiff alleged that Defendant did not maintain accurate records of the start and end times for meal periods taken by employees, instead, Plaintiff alleged employees regularly worked through their meal periods (and rest breaks) in order to complete their job duties within the timeframe allotted by Defendant. Defendant countered with proof that many employees took their meal periods and rest breaks, and that any inquiry into why some employees might have missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on a class and/or collective basis.  Defendant states that it had compliant meal and rest policies. Defendant also argued that employees had freedom to take breaks at their convenience, stating that they had much down time.

(ii)       The risk that Plaintiff would be unable to establish liability for alleged unpaid straight time and overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39, n. 33 (2014), *citing Dilts v. Penske Logistics, LLC*, No. 08-cv-218-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21, 2014) (dismissing certified off-the-clock claims based on proof at trial).  Defendant has contended, for example, that Plaintiff's allegations for unpaid wages are not subject to common proof since they are based on Plaintiff's allegation that employees worked through meal breaks.  Defendant stated that it had policies prohibiting off-the-clock work and relied on employees to keep accurate time.

(iii)       The risk that Defendant's challenged employment policies and practices might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal.4th at 14 & n. 28 (citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition).  Defendant contended, for example, that it did not have a purported policy of not paying required compensation, but rather a policy of paying compensation and of requiring employees to report any unpaid compensable time, and that any failures to report by employees cannot be legally charged to Defendant and in any event involve such highly individualized circumstances as to prevent class and collective certification should this case be litigated.  *See, e.g.*, *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) (employer not required to pay employees

for time spent performing work of which the employer had no knowledge).

(iv)     For the same reasons, liability, damages recovery, and certification risks are heightened given:  (1) the risk that uncertainties pertaining to the ultimate legality of Defendant's policies and practices could preclude class-wide awards of statutory penalties under Labor Code section 226(e); (2) the risk that individual differences between settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; and (3) the risk that class or collective treatment could be deemed improper as to one or more claims except for settlement purposes.

(v)     The risk that lengthy appellate litigation could ensue as to both liability and certification issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as opposed to unpredictable litigation.  Setareh Decl. ¶ 18.

In these respects, Defendant strongly deny any liability and the propriety of class certification for any reason other than settlement.  Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks that were (and continue to be) very difficult to assess.  In these respects, Defendant strongly denies any liability and the propriety of class certification for any reason other than settlement.  Setareh Decl. ¶ 18.

In light of the uncertainties of protracted litigation, the Settlement amount reflects a fair and reasonable recovery for the settlement Class Members.  The Settlement amount is, of course, a compromise figure.  By necessity, it took into account risks related to liability, damages, class action certification, and all the defenses asserted by the Defendant as to all such matters.  Moreover, each Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement to pursue their own claims. *Id*.

The Settlement falls well within the range of possible approval.  To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig*., 484 F.Supp.2d at 1080.  Following review of the payroll and timekeeping data provided by Defendant and applicable law, Plaintiff's counsel determined that the value of their labor code claims to be

approximately $40,167,647. Setareh Decl., ¶ 19. If the derivative Labor Code section 203 waiting time penalties and section 226 inaccurate wage statement penalties are included (those are $9,723,840 and $9,710,300) the potential exposure is $59,601,787. (*Id.*) However, as the Ninth Circuit has indicated, only damages not penalties need be considered when assessing the fairness of a settlement because the fairness inquiry looks to whether the class members were compensated for "past injuries". *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 964 (2009.) Further Labor Code section 203 and 226 penalties require a showing of willfulness, and Defendant would argue that any failure to pay meal or rest premiums or other amounts owed was not willful. For example, in *Naranjo v. Spectrum Security Services, Inc.,* 17 Cal.5th 1056, 1088 (2024) the California Supreme Court held that section 226 penalties like section 203 penalties, should not be awarded even if liability is established at trial, if the employer presents defenses that were "reasonable, if ultimately unconvincing."

Therefore, the settlement amount is approximately **29.87**% of the potential **$40,167,647** Class-wide labor code damages estimated by Plaintiff.  This is an excellent result, well above the amount of many settlements granted final approval by courts within the Ninth Circuit.  *See e.g., Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. Jun. 17, 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) [(3%]; *In re LDK Solar Secs. Litig.*, No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages").  Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes") (citation and internal quotation marks omitted). The Settlement should be approved because it confers a substantial benefit on Class Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits.

The average estimated Settlement Share for each Class Member is **$1,488.20** ($7,441,040 / 5,000). This amount reflects a fair compromise well within the range of reasonableness.  (Setareh Decl. ¶ 20).  Given the strong case that Defendant could bring to bear to challenge certification

and liability, this is not an inconsequential sum. (*Id.*) And, confirming the fundamental fairness of the Settlement, each Class Member will be compensated based on the number of Workweeks they worked during the applicable Class Period. (SA, § 5.6.2.)

### 2. The Proposed Method of Distributing Relief to the Class is Effective.

The settlement provides that class members will be mailed checks directly and will not need to submit a claim form. And for class members who do not cash their checks, the money will be sent to the *cy pres*, University of California Berkeley's Institute for Research on Labor and Employment.

### 3. The Proposed Award of Attorney Fees is Fair.

The Ninth Circuit "benchmark" for fees is 25% of the fund, but courts may award a higher percentage when merited. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002). In appropriate cases, state and federal courts applying the percentage-of-recovery method frequently award 33- 1/3% of the common fund. *See, e.g., Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 66 n.11 (2008) (empirical studies show that California fee awards generally average around one-third of the recovery).

Courts regularly apply a multiplier to the base lodestar to reflect the risks involved, the complexity of the litigation, the length of the case, and other relevant factors. *See Vizcaino,* 290 F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases").

In addition to the evaluation of "awards made in similar cases", the Court may consider (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the Plaintiff. See *Vizcaino supra* at 1048-50.

The contemplated 33 1/3% fee award is extremely reasonable in light of the class benefiting from the substantial risk of the claims litigated, years of hard work, exceptional results, and over $43,000 in out-of-pocket fees and expenses borne by the Plaintiff's lawyers without any guarantees of ever recovering these sums.

Plaintiff's Counsel have repeatedly shown their dedication to this case by tackling novel issues of law, devoting a substantial percentage of their resources, and committing to the long-term litigation of this action in the face of great opportunity costs.

The novelty and challenges presented by a class and PAGA action, as well as the corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly evaluated in connection with a fee motion. *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery).

The second and third factors (i.e. "the risk of litigation"; and, the "skill required and the quality of the work", respectively) are largely intertwined. *In re Washington Public Power Supply Sys. Sec. Litig.,* 19 F.3d at 1301 n.10.

Here, Class Counsel faced significant risk in pursuing this litigation that was only overcome by their skill and experience in the field of wage & hour class actions. *See* Setareh Decl., at ¶¶ 36-38; 41-43.

Plaintiff's Counsel also clearly faced substantial risks associated with certifying this class action and prevailing at trial. These numerous risks faced by Counsel, coupled with their deft skill in keeping this litigation on course towards trial until a settlement was reached, justify the 33.3% award contemplated by the settlement agreement. *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *15 (C.D. Cal. July 21, 2008) ("Given the novel legal issues raised, the court concludes that the circumstances warrant an award" of 34%).

The fourth factor (*i.e.* "the contingent nature of the fee and the financial burden carried by the Plaintiffs) also clearly weighs in favor of the contemplated attorney fee 33.3% award. *In re Quantum Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997). Here, Class Counsel undertook all of the risks of this litigation on a contingent fee basis. Setareh Decl. ¶ 41. They also faced the risks involved in litigating this case for years and spending thousands of dollars in costs, without any guarantee of future pay or reimbursement.

In addition to these hard costs, Plaintiff's Counsel committed many attorney hours to the action. This includes but is not limited to defending Plaintiff's deposition, propounding and responding to written discovery, interviewing percipient witnesses, obtaining declarations from

percipient witnesses, reviewing documents produced by Defendant, working with Plaintiff's expert, beginning to draft the motion for class certification, drafting mediation briefs and preparing extensively for two mediations, and monitoring other litigation involving Defendant with potentially overlapping claims.

Additionally, the number of attorneys and staff necessary to litigate this action constituted a significant percentage of Plaintiff's Counsel's total workforce. See Setareh Decl. at ¶ 40. Again, all of these important resources were willingly committed by Plaintiff's Counsel knowing that they risked recovering nothing.

### D. CLASS MEMBERS WILL BE TREATED EQUITABLY RELATIVE TO ONE ANOTHER

Rule 23(e)(2)(D) requires a court to determine whether the "proposal treats class members equitably relative to each other." For this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.

Here, the amount of money each Class Member receives is directly proportional to the number of workweeks that Class Member worked during the Class Period. SA ¶ 5.6.2. The allocation to the PAGA claim will be distributed pursuant to the California Labor Code, which mandates that 75% go to the California Labor and Workforce Development Agency ("LWDA"), and the remaining 25% go to the PAGA aggrieved employees. SA ¶ 2.34. Pursuant to the terms of the Settlement Agreement, the 25% allocation to the PAGA aggrieved employees will be distributed to them pro rata based on the number of pay periods each worked during the applicable PAGA period. Such a distribution is inherently just, fair and reasonable.

## VI. THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE

### A. INFORMATION ABOUT THE SETTLEMENT.

#### 1. Differences Between the Settlement Class and the Class Proposed in the Complaint.

The Settlement Class is narrower in that the complaint class ends when judgment is entered while the settlement class period ends on the date of preliminary approval. In reality, if a class was

certified, the class definition would only include people employed as of the time of class certification. Therefore, it makes sense to end the class period as of preliminary approval.

The Settlement Class is slightly narrower than pled in the complaint in that individuals employed by staffing agencies or third parties are not included. This is because Plaintiff was not employed by a staffing agency, and Plaintiff agreed to limit the scope of the settlement to direct hire employees like Plaintiff. Setareh Decl. ¶ 22.

There is also a change in the class definition of the Settlement Class, to exclude flight attendants, pilots, and those persons who participated in Delta's Enhanced Retirement or Voluntary Opt-Out Programs in 2020 and who did not thereafter work for Delta in a non-exempt position in California during the Class Period. SA ¶ 2.3. Flight attendants and pilots are excluded from the settlement class because they do not face the same wage and hour issues alleged in this case. Flight attendants and pilots have unique and distinct legal and factual issues. For example, flight attendants and pilots may work in multiple states. The complaint in this case alleges wage and hour issues that occurred for those individuals working for Delta at the airport. Persons who participated in Delta's Enhanced Retirement or Voluntary Opt-Out Programs in 2020 are excluded from the settlement class because they voluntarily signed documents releasing their claims, such as severance agreements.

**2.    Differences in the Claims to be Released and the Claims Pled.**

The Settlement Agreement expressly releases FLSA claims, even though the pleadings do not assert an FLSA claim. Under Ninth Circuit precedent, FLSA claims based on the same factual predicate as state law wage and hour claims are released even if there is no FLSA claim pleaded in the settled lawsuit. *Rangel v. PLS Check Cashers of California Inc.*, 899 F.3d 1106, 1111 (9th Cir. 2018). By including an express release of FLSA claims, settlement class members are alerted to a consequence of the settlement that would occur anyway.

**3.    Other Cases Affected by the Settlement.**

Defendant filed a notice of pendency of other action on October 20, 2023. (ECF No. 40). The case of *Wilfred McCauley v. Delta Air Lines, Inc.*, Case No. 2:23-cv-07079-DSF-AS (C.D. Cal.) is stayed because the case here fully encompasses the claims and putative class alleged in the

1    *McCauley* action.

2         Defendant also filed a notice of pendency of other action on April 29, 2024 regarding the

3    case of *Mitchel Garnett v. Delta Air Lines, Inc.*, Case No. 24STCV01693 (Los Angeles Superior

4    Court). (ECF No. 43). The *Garnett* case was dismissed on August 13, 2024.

5         Defendant represents that another putative wage and hour class action, which is

6    encompassed by Plaintiff Toledo's claims and settlement, is *Rajdeep Sandhu v. Delta Air lines,*

7    *Inc*., Case No. 24-CIV-05670 in San Mateo Superior Court. *Rajdeep* was filed on September 11,

8    2024.

9         **B.     SETTLEMENT ADMINISTRATION**

10        The Parties as selected Phoenix Settlement Administrators as the Settlement Administrator

11    in this case. Plaintiff obtained three bids from administrators Simpluris, ILYM Group, and

12   Phoenix. Phoenix's bid was the most comprehensive and very competitive. In Class counsel,

13   experience, Phoenix is a competent administrator who is responsive and diligent. Setareh Decl. ¶

14   33. Phoenix is experienced and has security procedures in place. Declaration of Michael Moore ¶¶

15   2-15. Phoenix has administered 7 cases with Setareh Law Group in the last 2 years and has

16   administered 19 cases with Morgan, Lewis & Bockius, LLP in the last 2 years. *Id*. ¶ 18.

17        **C.     NOTICE.**

18        The Notice of Settlement is Exhibit 1 to the settlement agreement. Consistent with section

19   3 of the Procedural Guidance, the Notice provides contact information for Class Counsel (p. 2); a

20   website address for settlement class members to obtain further information, see key documents,

21   and instructions on how to obtain further information on PACER (*Id*. at p. 7); the date and time of

22   the final approval hearing with a statement that the date may change without further notice to the

23   class (*Id*. at p. 1); and instructs class members to check the website or PACER to ensure the date

24   and time of the final approval hearing have not changed. *Id*. at pp. 1, 7.

25        The Notice also uses the proposed language suggested in the Procedural Guidance. *Id*. at 7.

26        **D.     OPT OUTS.**

27        The Notice advises class members that they can opt out by sending a written request to the

28   administrator. It also advises them of the consequences of opting out, and sets forth information

1  required for identification purposes including name and the last four digits of the social security

2  number. *Id.* at p. 5.

3      **E.**    **OBJECTIONS.**

4      The Notice advises class members of the deadline to submit objections and provides that

5  objections are to be sent to the Court. *Id*. at p. 6.

6      **F.**    **SERVICE AWARD.**

7      Plaintiff Marvin Toledo seeks a service award of $10,000 for the extensive time and effort

8  he contributed to this case, without which the $12,000,000.00 Settlement would not exist. Setareh

9  Decl. ¶ 31. Mr. Toledo attended deposition in this matter and responded to discovery requests. *Id.*

10  Mr. Toledo provided substantial assistance to Class Counsel in developing the claims in this case,

11  provided relevant documents and discussed the pending settlement with Plaintiff's counsel.  *Id.*

12      **G.**    **CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS.**

13      Defendant's counsel represents that Defendant will comply with CAFA and handle

14  providing CAFA notices.

15      On the date of filing this motion, Class Counsel uploaded a copy of this motion and the

16  Settlement Agreement to the LWDA website. Setareh Decl. ¶ 46.

17      **H.**    **COMPARABLE OUTCOME.**

18      A comparable settlement to the instant one is *Frlekin v. Apple*, 2021 WL 6126961 (N.D.

19  Cal. 2021), which involved similar off-the-clock claims. However, that settlement occurred after

20  the district court had granted summary judgment to the plaintiff class on liability, and the Ninth

21  Circuit had affirmed that decision. Thus, *Frlekin* involved much less risk at the time of settlement.

22  The *Frlekin* settlement involved a total settlement fund of $29.9 million for 14,683 class members.

23  *Id.* at *2. In *Frlekin*, the gross settlement amount per class member was $2,036 ($29.9 million /

24  14,683.) The gross settlement amount per class member in this settlement is $2,400 ($12 million /

25  $5,000), which is higher than the gross settlement amount per class member in *Frlekin*. There are

26  not a plethora of wage and hour class actions which have settled for a class of this size or in an

27  equivalent amount.

28  //

1      **I.**     **ELECTRONIC VERSIONS.**

2      Upon filing of this motion, Class Counsel will submit Word versions of the Proposed

3 Order and Settlement Notice.

4      **J.**     **OVERLAPPING CASES.**

5      Delta's counsel represents that they will comply with this requirement.

6 **VII.**     **THE PAGA ALLOCATION IS PROPER**

7      PAGA provides for a $100 per employee per pay period penalty for the "initial" violation and

8 $200 per employee per pay period for "subsequent" violations. Cal. Lab. Code § 2699(f)(2).

9      Theoretically, PAGA penalties could be in excess of $36 million. Setareh Decl. ¶ 18. However,

10 it is well-settled that a PAGA penalty award should be proportionate to the underlying damages.

11 *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1214 (2008): "The penalty award which totaled

12 less than one-third of plaintiff's $804,783 damage award, was also proportional to Cintas's

13 misconduct."

14      The Agreement provides for a PAGA allocation of $600,000, of which 75% will be paid to

15 the LWDA out of the gross settlement amount, and the remaining 25% will be distributed to PAGA

16 Group Members. (SA ¶ 5.7.1).

17      Admittedly, the PAGA allocation is a small percentage of the possible exposure (1.64% of

18 what might be awarded). However, Plaintiff submits that is permissible in this case because the

19 settlement of the underlying wage and hour claims is robust, and that serves the deterrent purpose of

20 the PAGA statute. *O'Connor v. Uber Technologies, Inc.*, 201 F.Supp.3d 1110, 1135 (N.D. Cal.

21 2016): "By providing fair compensation to the class members as employees and substantial monetary

22 relief, a settlement not only vindicates the rights of class members as employees but may have a

23 deterrent effect upon the defendant employer and other employers, an objective of PAGA."

24      Courts have routinely approved similar PAGA allocations. *Viceral v. Mistras Group, Inc.*,

25 2016 WL5907869 (N.D. Cal. 2016) (0.15%); *Saechao v. Landrys, Inc.*, 2016 WL 3227180, *3 (N.D.

26 Cal. June 11, 2016) (approving settlement of PAGA claim for $12,000, or 1.3% of the estimated total

27 PAGA value of $921,000, according to the plaintiff's expert).

28      This is because trial courts have broad discretion to reduce the amount of PAGA penalties if

1  the award would be: "unjust, arbitrary and oppressive or confiscatory." Cal. Lab. Code § 2699(e)(2).

2  The PAGA allocation should be approved.

**VIII.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS, AND APPOINT PLAINTIFF AND CLASS COUNSEL TO REPRESENT THEM**

**A.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR PURPOSES OF SETTLEMENT**

**1.    Standard for Conditional Class Certification Upon Settlement**

Parties seeking class certification for settlement purposes must still generally satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To maintain a class action under Rule 23(a), a plaintiff must demonstrate: (1) numerosity: the class is so numerous that joinder of all members is impracticable, (2) adequacy of representation: the representative parties will fairly and adequately protect the interests of the class, (3) typicality: the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) commonality: there are questions of law or fact common to the class. In addition to these requirements, a plaintiff must satisfy one of the Rule 23(b) prongs to maintain a class action. Under Rule 23(b)(3), the plaintiff must prove: "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." However, in the context of settlement, the Court "need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem supra* at 620.

**2.    Numerosity**

To satisfy the numerosity requirement under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable". *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008). No specified number of members of class is needed to maintain a class action. *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967). Numerosity is generally presumed for purposes of class action certification when the proposed class would have at least 40 members. *Lapin v. Goldman Sachs & Co*., 254 F.R.D. 168 (S.D.N.Y. 2008).

Here, the estimated count of approximately 5,000 Class Members satisfies the numerosity

requirement.  Setareh Decl., ¶ 44.

### 3.    Adequacy of Representation

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiff has the same interests as the Settlement Class, there is no conflict between Plaintiff's claims and those of the other Class Members, and Plaintiff is represented by experienced and competent counsel who have substantial experience in litigating wage-and-hour class actions and who have no known conflict of interest with absent Settlement Class Members. (Setareh Decl., ¶¶ 35-38.)

### 4.    Typicality

Rule 23(a) likewise requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent Class Members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Here, Plaintiff's claims are essentially identical to all other non-exempt employees as described in the class provided in the Settlement and Plaintiff's claims are typical of such workers with the same common issues.  Setareh Decl., ¶ 22.

### 5.    Commonality

Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon*, 150 F.3d at 1019.  Here, Plaintiff's claims involve common questions of both fact and law regarding Defendant's alleged failure to abide by wage-and-hour law. Setareh Decl., ¶¶ 23-24.

### 6.    Predominance and Superiority

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification for settlement purposes is proper under one of the three requirements of Rule 23(b).  Here, "questions of law or fact common to class members predominate over any questions

affecting only individual members, and…a class action is superior to other available methods for fairly and efficiently adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Setareh Decl., ¶¶ 24-26. For settlement purposes common issues regarding the legality of Delta's wage and hour practices predominate over any individualized issues. And, given the small size of any individual claims, class treatment is plainly superior to individual adjudication.

## IX.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant the motion for preliminary approval in its entirety.

DATED:  November 22, 2024                    **SETAREH LAW GROUP**

                                             */s/ Farrah Grant*
                                             SHAUN SETAREH
                                             THOMAS SEGAL
                                             FARRAH GRANT
                                             Attorneys for Plaintiff

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT