1  Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
2  Thomas Segal (SBN 222791)
    thomas@setarehlaw.com
3  Farrah Grant (SBN 293898)
    farrah@setarehlaw.com
4  SETAREH LAW GROUP
   420 N Camden Drive, Suite 100
5  Beverly Hills, CA 90210
   Telephone (310) 888-7771
6  Facsimile (310) 888-0109

7  Attorneys for Plaintiff  MARVIN TOLEDO

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  MARVIN TOLEDO, on behalf of himself and      Case No. 3:22-cv-00081-AMO
    all others similarly situated, and the general
13  public,                                       **CLASS AND REPRESENTATIVE ACTION**

14              *Plaintiff,*                       **FIRST AMENDED COMPLAINT**

15         v.                                      1.  Failure to Provide Meal Periods (Lab. Code
                                                       §§ 204, 223, 226.7, 512 and 1198);
16  DELTA AIR LINES, INC., a Delaware             2.  Failure to Provide Rest Periods (Lab. Code
    corporation; and DOES 1 through 50,              §§ 204, 223, 226.7 and 1198);
17  inclusive,                                     3.  Failure to Pay Hourly Wages (Lab. Code §§
                                                       223, 510, 1194, 1194.2, 1197, 1997.1 and
18              *Defendants.*                          1198);
                                                   4.  Failure to Indemnify (Lab. Code § 2802);
19                                                 5.  Failure to Provide Accurate Written Wage
                                                       Statements (Lab. Code §§ 226(a));
20                                                 6.  Failure to Timely Pay All Final Wages
                                                       (Lab. Code §§ 201, 202 and 203);
21                                                 7.  Failure to Pay All Earned Vacation Time
                                                       (Lab. Code § 227.3);
22                                                 8.  Unfair Competition (Bus. & Prof. Code §§
                                                       17200 *et seq.*);
23                                                 9.  Civil Penalties (Lab. Code § 2698, *et seq.*)

24                                                 **JURY TRIAL DEMANDED**

25

26

27

28

Plaintiff MARVIN TOLEDO ("Plaintiff"), on behalf of himself and all others similarly situated, and the general public, complains and alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this class and representative action against defendants DELTA AIR LINES, INC., a Delaware corporation; and DOES 1 through 50, inclusive, (collectively referred to as "Defendants") for alleged violations of the Labor Code. As set forth below, Plaintiff alleges that Defendants have

(1)     failed to provide Plaintiff and all other similarly situated individuals with meal periods;

(2)     failed to provide them with rest periods;

(3)     failed to pay them premium wages for missed meal and/or rest periods;

(4)     failed to pay them premium wages for missed meal and/or rest periods at the regular rate of pay;

(5)     failed to pay them overtime wages at the correct rate;

(6)     failed to pay them double time wages at the correct rate;

(7)     failed to pay them overtime and/or double time wages and/or sick pay by failing to include all applicable remuneration in calculating the regular rate of pay;

(8)     failed to pay them at least minimum wage for all hours worked;

(9)     failed to reimburse them for all necessary business expenses;

(10)     failed to provide them with accurate written wage statements;

(11)     failed to pay them all of their final wages following separation of employment; and

(12)     failed to pay them for all earned vacation time following separation of employment;

Based on these alleged violations, Plaintiff now brings this class and representative action to recover unpaid wages, restitution, civil and statutory penalties, and related relief on behalf of himself and all others similarly situated, all other aggrieved employees, and the State of California.

## JURISDICTION AND VENUE

2.     Defendant removed this case to federal court asserting jurisdiction under 28 U.S.C. Sections 1332, 1441, 1446 and 1453.

1

1

**PARTIES**

2  3.  Plaintiff is and was, and at all relevant times mentioned herein, an individual

3 residing in the State of California.

4  4.  Plaintiff is informed and believes, and thereupon alleges, that Defendant DELTA

5 AIR LINES, INC. is, and at all relevant times mentioned herein, a Delaware corporation doing

6 business in the State of California.

7  5.  Plaintiff is ignorant of the true names and capacities of the defendants sued herein as

8 DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names.

9 Plaintiff will amend this Complaint to allege the true names and capacities of the DOE defendants

10 when ascertained.  Plaintiff is informed and believes, and thereupon alleges, that each of the

11 fictitiously named defendants are responsible in some manner for the occurrences, acts and

12 omissions alleged herein and that Plaintiff's alleged damages were proximately caused by these

13 defendants, and each of them.  Plaintiff will amend this complaint to allege both the true names and

14 capacities of the DOE defendants when ascertained.

15  6.  Plaintiff is informed and believes, and thereupon alleges that, at all relevant times

16 mentioned herein, some or all of the defendants were the representatives, agents, employees,

17 partners, directors, associates, joint venturers, joint employers, principals, or co-participants of some

18 or all of the other defendants, and, in doing the things alleged herein, were acting within the course

19 and scope of such relationship and with the full knowledge, consent, and ratification by such other

20 defendants.

21

**CLASS ALLEGATIONS**

22  7.  This action has been brought and may be maintained as a class action pursuant to

23 Federal Rules of Civil Procedure 23, because there is a well-defined community of interest among

24 the persons who comprise the readily ascertainable classes defined below and because Plaintiff is

25 unaware of any difficulties likely to be encountered in managing this case as a class action.

26  8.  **Relevant Time Period**: The relevant time period is defined as the time period

27 beginning four years prior to the filing of this action until judgment is entered.

28  ///

FIRST AMENDED CLASS AND REPRESENTATIVE-ACTION COMPLAINT

**Hourly Employee Class**:  All persons employed by Defendants and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California during the **Relevant Time Period**.

> **Meal Period Sub-Class**: All **Hourly Employee Class** members who worked in a shift in excess of five hours during the **Relevant Time Period**.

> **Rest Period Sub-Class**: All **Hourly Employee Class** members who worked a shift of at least three and one-half (3.5) hours during the **Relevant Time Period**.

> **Wage Statement Penalties Sub-Class**: All **Hourly Employee Class** members employed by Defendants in California during the period beginning one year before the filing of this action and ending when final judgment is entered.

> **Waiting Time Penalties Sub-Class**: All **Hourly Employee Class** members who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered.

> **Vacation Time Sub-Class**: All **Hourly Employee Class** members who separated from their employment with Defendants during the **Relevant Time Period.**

**UCL Class**: All **Hourly Employee Class** members employed by Defendants in California during the **Relevant Time Period**.

**Regular Rate Class**: All of Defendants' hourly, non-exempt employees who were not paid overtime wages for all overtime hours worked and/or premiums for meal and/or rest break violations and/or sick pay as a result of not correctly calculating their regular rate of pay to include all applicable remuneration, including, but not limited to, commissions, afternoon shift premiums, night premiums, temporary duty override, shared rewards, incentive-All About Cust, award, pay card value, premium override, non-discretionary bonuses and/or other applicable remuneration.

**Expense Reimbursement Class:** All persons employed by Defendants in California who were not reimbursed for required personal cell phone expenses and personal protective equipment, including steel toed boots, safety vests, marshaling wands, knee pads, earmuffs, and/or gloves during the **Relevant Time Period**.

9.     **Reservation of Rights**:  Pursuant to Federal Rule of Civil Procedure 23, Plaintiff reserves the right to amend or modify the class definitions with greater specificity by further division into sub-classes and/or by limitation to particular issues.

10.     **Numerosity**: The class members are so numerous that the individual joinder of each individual class member is impractical. While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes, and thereupon alleges, that the actual number exceeds the minimum required for numerosity under California law.

11.    **<u>Commonality and Predominance:</u>** Common questions of law and fact exist as to all class members and predominate over any questions that affect only individual class members. These common questions include, but are not limited to:

    i.    Whether Defendants maintained a policy or practice of failing to provide employees with their meal periods;

    ii.    Whether Defendants maintained a policy or practice of failing to provide employees with their rest periods;

    iii.    Whether Defendants failed to pay premium wages to class members when they have not been provided with required meal and/or rest periods;

    iv.    Whether Defendants failed to pay minimum and/or overtime wages to class members as a result of policies that fail to provide meal periods in accordance with California law;

    v.    Whether Defendants failed to pay minimum and/or overtime wages to class members for all time worked;

    vi.    Whether Defendants used payroll formulas that systematically fail to account for non-discretionary bonuses and/or other applicable remuneration when calculating regular rates of pay for class members;

    vii.    Whether Defendants failed to pay overtime wages and/or sick pay to class members as a result of incorrectly calculating their regular rates of pay;

    viii.    Whether Defendants failed to pay premium wages to class members based on their respective "regular rates of compensation" by not including commissions and/or other applicable remuneration in calculating the rates at which those wages are paid;

    ix.    Whether Defendants failed to reimburse class members for all necessary business expenses incurred during the discharge of their duties;

    x.    Whether Defendants failed to provide class members with accurate written wage statements as a result of providing them with written wage statements with inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked;

xi.    Whether Defendants applied policies or practices that result in late and/or incomplete final wage payments;

xii.    Whether Defendants applied policies or practices that result in an unlawful forfeiture of vested vacation pay;

xiii.    Whether Defendants are liable to class members for waiting time penalties under Labor Code section 203;

xiv.    Whether class members are entitled to restitution of money or property that Defendants may have acquired from them through unfair competition;

12.    **Typicality:** Plaintiff's claims are typical of the other class members' claims. Plaintiff is informed and believes, and thereupon alleges, that Defendants have a policy or practice of failing to comply with the Labor Code and Business and Professions Code as alleged in this Complaint.

13.    **Adequacy of Class Representative:** Plaintiff is an adequate class representative in that he has no interests that are adverse to or otherwise conflict with the interests of absent class members and is dedicated to vigorously prosecuting this action on their behalf. Plaintiff will fairly and adequately represent and protect the interests of the other class members.

14.    **Adequacy of Class Counsel:** Plaintiff's counsel are adequate class counsel in that they have no known conflicts of interest with Plaintiff or absent class members, are experienced in wage and hour class action litigation, and are dedicated to vigorously prosecuting this action on behalf of Plaintiff and absent class members.

15.    **Superiority:** A class action is vastly superior to other available means for fair and efficient adjudication of the class members' claims and would be beneficial to the parties and the Court. Class action treatment will allow a number of similarly situated persons to prosecute their common claims simultaneously and efficiently in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. In addition, the monetary amounts due to many individual class members are likely to be relatively small and would thus make it difficult, if not impossible, for individual class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting class members to effectively pursue the recovery of monies owed to them. Further, a class action will prevent the

1    potential for inconsistent or contradictory judgments inherent in individual litigation.

2    **GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

3    16.    Plaintiff worked for Defendants as an hourly, non-exempt employee during the

4    applicable statutory period.

5    **Security Check and Off-the-Clock**

6    17.    Plaintiff and the putative class were required to go through a security check at the

7    time of entering and leaving the premises on which they worked. The security check required

8    Plaintiff and the putative class to first wait in a general purpose line to go through a security

9    screening. Delta provided specific requirements for how those checks were to be conducted,

10   including which clothing items were subject to search.

11   18.    Plaintiff and the putative class were required to stand through long lines to be fully

12   inspected and cleared to enter the premises. Getting through security took on average 35 minutes,

13   but at times could be longer. All of this time was considered Plaintiff and the putative class' own

14   personal time for which they were not compensated, although the security checks were done for the

15   benefit of Defendants and as an everyday work requirement. Defendants exert control over the

16   extent to which employees were subject to security checks as exemplified by their SkyPriority

17   Access program which offers expedited security lines. Some of the security checks were manned

18   and controlled by Delta employees, not by government or airport employees.

19   19.    Plaintiff and the putative class were required to spend at least five to fifteen minutes

20   each time they went through the security check—time that was not paid by Defendants.

21   20.    Plaintiff and the putative class were required to go through the security check prior

22   to clocking in at the beginning of each work shift and were required to clock out first at the end of

23   each work shift prior to going through the security check.

24   21.    Additionally, after getting through long security lines, Plaintiff and the putative

25   class would walk to their designated wall machine for clocking in and/or clocking out, and there

26   would be another line of employees which would take approximately five minutes to get through

27   so that they could punch in and start their recorded hours for pay.

28

22. After going through security checks but before clocking in, Defendants required Plaintiff and the putative class to don personal protective equipment which typically took around ten minutes. Plaintiff and putative class members were not reimbursed for the off-the-clock work donning and doffing of personal protective equipment including safety vests, gloves and ear muffs, which are kept on the premises and which employees cannot take home.

23. Defendants had a time clock policy that results in underpayment of wages to Plaintiff and putative class members. Defendants' time clock policy pays putative class members based on their scheduled shift time, even if the putative class member clocks in six minutes early or late, or clock out six minutes early or late. However, the policy also provides that an employee who clocks in after the start time of the shift will be considered late (even within the six minute window) and that an employee who clocks out before the end time of the shift (even within the six minute window) may be considered to have left work early. Therefore, the effect of Defendants' policy is that the putative class members have to clock in so that the clock in time will be at or before the start of their shift, and clock out so that the clock out time will be at or after the end of their shift. And they do not get paid for the time pre and post shift that they spend waiting to clock in. Thus, Defendants' policy requires putative class members to work-off-the-clock.

24. Finally, Plaintiff and the putative class were constantly having to stay late and work "off-the-clock." Because people would leave but there would still be pressing work requirements, Plaintiff and the putative class were required to stay after their shift had ended and pick up other employees' duties so that Defendant could maintain their schedule. Plaintiff and putative class members were required to perform off-the-clock work at the end of shifts when planes arrive late at the end of their shift.

25. Based on the above, Defendants' security check practices and timeclock procedures have resulted in substantial amounts of time not recorded as hours worked therefore resulting in substantial amounts of wages not paid to Plaintiff and the putative class.

26. Defendants knew or should have known that Plaintiff and the putative class were performing work before and after their scheduled work shifts and failed to pay Plaintiff and the putative class for these hours.

27.     Defendants were aware of this practice and directed, permitted, or otherwise encouraged Plaintiff and the putative class to perform off-the-clock work.

28.     As a result of Defendants' policies and practices, Plaintiff and the putative class were not paid for all hours worked.

**Missed, Shortened, and/or Interrupted Meal Periods and Policy of Deducting 30 Minutes**

29.     During their employment with Defendants, Plaintiff and the putative class regularly worked shifts of eight to twelve hours per day, without being afforded a meal break during the first five hours, and/or a second meal break after ten hours, as required by California law. Defendants had a policy of deducting thirty minutes from Plaintiff's and the putative class' paychecks, regardless of whether Plaintiff and the putative class received a meal period or not.

30.     Plaintiffs and the putative class members were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to (1) Defendants' policy of not scheduling each meal period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) a flawed formal written meal and rest period policy that did not encourage employees to take their meal periods. Defendants' have a defective meal break policy which provides that employees have waived the right to a meal break unless they affirmatively ask for one.

31.     Plaintiff and the putative class were directed by their managers and supervisors to clock out for meal periods even though they continued to perform work with the full knowledge of their supervisors. Plaintiff and the putative class would be forced to clock out for lunch even though they did not actually go to lunch and continued working. Additionally, there were three security checks required when entering or leaving the work premises which would take approximately 35 minutes to get through, so it was impossible to leave the premises. Plaintiff and the putative class clocked out with a wall machine, and there was a line of employees looking to clock in and out at the same time. Therefore, their meal periods were regularly shortened because they were required to be timely clocked in to report to their stations. Additionally, if a flight arrived early or other work popped up suddenly, Plaintiff and the putative class were required by their managers and supervisors to attend to pressing tasks regardless of whether they were

1   supposedly taking a meal period or not.

2       32.    Defendants' failed to provide compliant meal and rest breaks due to Defendants'

3   requirement that Plaintiff and putative class members be at the gate within fifteen minutes of each

4   arriving and departing aircraft. Due to the frequency of incoming planes, this meant that Plaintiff

5   and putative class members would always have to be at the gate, even during their meal and rest

6   breaks.

7       33.    Defendants' failed to provide compliant meal and rest breaks due to Defendants'

8   prohibiting Plaintiff and putative class members from going to the terminal during their breaks.

9       34.    As a result of Defendants' policy, Plaintiffs and the putative class were regularly not

10  provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours

11  worked due to complying with Defendants' productivity requirements that required Plaintiff and

12  the putative class to work through their meal periods in order to complete their assignments on

13  time.

**Missed Rest Periods**

14      35.    Plaintiff and the putative class were not provided with rest periods of at least ten

15  (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendants'

16  policy of not scheduling each rest period as part of each work shift; (2) chronically understaffing

17  each work shift with not enough workers; (3) imposing so much work on each employee such that

18  it made it unlikely that an employee would be able to take their breaks if they wanted to finish their

19  work on time; and (4) a flawed formal written rest period policy that did not encourage employees

20  to take their rest periods. Defendants have a defective rest break policy which fails to permit

21  Plaintiff and putative class members to leave the premises during rest breaks

22      36.    There were three security checks required when entering or leaving the work

23  premises which would take approximately 35 minutes to get through, so it was impossible to leave

24  the premises for rest breaks.

25      37.    Plaintiff and the putative class were required to stay on the premises at all times. No

26  set time was scheduled for rest breaks, and a majority of their shifts Plaintiff and the putative class

27  were unable to take any rest breaks as they were required to continuously work through the

28

duration of their shifts.

38.     Defendants' failed to provide compliant meal and rest breaks due to Defendants' requirement that Plaintiff and putative class members be at the gate within fifteen minutes of each arriving and departing aircraft. Due to the frequency of incoming planes, this meant that Plaintiff and putative class members would always have to be at the gate, even during their meal and rest breaks.

39.     Defendants' failed to provide compliant meal and rest breaks due to Defendants' prohibiting Plaintiff and putative class members from going to the terminal during their breaks.

40.     As a result of Defendants' policy, Plaintiff and the putative class were regularly not provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked due to complying with Defendants' productivity requirements that required Plaintiff and the putative class to work through their rest periods in order to complete their assignments on time.

**Regular Rate of Pay**

41.     The regular rate of pay under California law includes all remuneration for employment paid, on behalf of the employer, to the employee. This requirement includes, but is not limited, to, commissions and non-discretionary bonuses.

42.     During the applicable limitations period, Defendants violated the rights of Plaintiff and the putative class under the above-referenced Labor Code sections by failing to pay them meal and/or rest break premiums and/or overtime wages and/or sick pay for all overtime hours worked in violation of Labor Code §§ 510, 1194, and 1198 as a result of not correctly calculating their regular rate of pay to include all applicable remuneration, including, but not limited to, commissions, afternoon shift premiums, night premiums, temporary duty override, shared rewards, incentive-All About Cust, award, pay card value, premium override,  non-discretionary bonuses and/or other applicable remuneration.

**Expense Reimbursement**

43.     Plaintiff and the putative class members were required to purchase personal protective equipment, including steel toed boots, safety vests, marshaling wands, knee pads, earmuffs, and gloves to perform their job duties.

44.     Plaintiff and the putative class members were not fully reimbursed for business expenses incurred in purchasing these aspects of their uniform and their personal protective equipment.

45.     In addition to the personal protective equipment, Plaintiff and the putative class members were required to use their personal cell phone for work purposes.  Defendants required Plaintiff and the putative class members to use their personal cell phones to communicate with their supervisors, and they were required to respond to all work-related cell phone calls and text messages from Defendants.  Defendants did not provide Plaintiff or the putative class members with company cell phones or alternative means of communication for these general work-related communications.  Additionally, Defendants did not reimburse Plaintiff or the putative class members for a reasonable percentage of those phone expenses incurred.

46.     Defendants failed to reimburse Plaintiff and the putative class for such necessary business expenses incurred by them.

<u>**Wage Statements**</u>

47.     Plaintiff and the putative class were not provided with accurate wage statements as mandated by law pursuant to Labor Code § 226.

48.     Defendants failed to comply with Labor Code section 226(a)(1) as "gross wages earned" were not accurately reflected in that all hours worked, including overtime and "off-the-clock" work were not included.

49.     Defendants failed to comply with Labor Code section 226(a)(2) as "total hours worked by the employee" were not accurately reflected in that all hours worked, including overtime and "off-the-clock" work were not included.

50.     Defendants failed to comply with Labor Code section 226(a)(5) as "net wages earned" were not accurately reflected in that all hours worked, including overtime and "off-the-clock" work were not included.

51.     Defendants failed to comply with Labor Code section 226(a)(9) as "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee" were not accurately reflected in that all hours worked, including

overtime and "off-the-clock" work were not included.

**Vacation Pay**

52.     Vacation pay is considered a form of wages under California law.  Vested vacation pay and other similar forms of paid time off earned based on labor performed are considered wages that cannot be subject to forfeiture without compensation for forfeited days at the applicable rates required by law.

53.     At all relevant times during the applicable limitations period, Defendants maintained a policy or practice that provided for the unlawful forfeiture of vested vacation pay.

**FIRST CAUSE OF ACTION**

**FAILURE TO PROVIDE MEAL PERIODS**

**(Lab. Code §§ 204, 223, 226.7, 512 and 1198)**

**(Plaintiff and Meal Period Sub-Class)**

54.     Plaintiff incorporates by reference the preceding paragraphs as if fully alleged herein.

55.     At all relevant times, Plaintiff and the **Meal Period Sub-Class** members have been non-exempt employees of Defendants entitled to the full meal period protections of both the Labor Code and the applicable Industrial Welfare Commission Wage Order ("Wage Order").

56.     Labor Code § 512 and § 11 of the applicable Wage Order impose an affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five hours, and to provide them with two uninterrupted, duty-free meal periods of at least thirty minutes for each work period of ten hours.

57.     Labor Code § 226.7 and § 11 of the applicable Wage Order both prohibit employers from requiring employees to work during required meal periods and require employers to pay non-exempt employees an hour of premium wages on each workday that the employee is not provided with the required meal period.

58.     Compensation for missed meal periods constitutes wages within the meaning of Labor Code § 200.

59.     Labor Code § 1198 makes it unlawful to employ a person under conditions that

1   violate the applicable Wage Order.

2       60.     Section 11 of the applicable Wage Order states:

3           "No employer shall employ any person for a work period of more than five (5)
4           hours without a meal period of not less than 30 minutes, except that when a
            work period of not more than six (6) hours will complete the day's work the
5           meal period may be waived by mutual consent of the employer and employee.
            Unless the employee is relieved of all duty during a 30 minute meal period, the
6           meal period shall be considered an 'on duty' meal period and counted as time
            worked.  An 'on duty' meal period shall be permitted only when the nature of
7           the work prevents an employee from being relieved of all duty and when by
            written agreement between the parties an on-the-job paid meal period is agreed
8           to.  The written agreement shall state that the employee may, in writing, revoke
            the agreement at any time."

9       61.     At all relevant times, Plaintiff was not subject to a valid on-duty meal period

10  agreement. Plaintiff is informed and believes that, at all relevant times, **Meal Period Sub-Class**

11  members were not subject to valid on-duty meal period agreements with Defendants.

12      62.     Plaintiff alleges that, at all relevant times during the applicable limitations period,

13  Defendants maintained a policy or practice of not providing Plaintiff and members of the **Meal**

14  **Period Sub-Class** with uninterrupted, duty-free meal periods for at least thirty (30) minutes for

15  each five (5) hour work period, as required by Labor Code § 512 and the applicable Wage Order.

16      63.     Plaintiff alleges that, at all relevant times during the applicable limitations period,

17  Defendants maintained a policy or practice of failing to pay premium wages to **Meal Period Sub-**

18  **Class** members when they worked five (5) hours without clocking out for any meal period.

19      64.     Plaintiff alleges that, at all relevant times during the applicable limitations period,

20  Defendants maintained a policy or practice of deducting one-half hour for a meal period from the

21  paychecks of **Meal Period Sub-Class** members on each day they worked, regardless of whether or

22  not they were able to take an uninterrupted, duty-free meal period.

23      65.     Plaintiff alleges that, at all relevant times during the applicable limitations period,

24  Defendants maintained a policy or practice of not providing Plaintiff and members of the **Meal**

25  **Period Sub-Class** with a second meal period when they worked shifts of ten or more hours and

26  failed to pay them premium wages as required by Labor Code § 512 and the applicable Wage

27  Order.

28      66.     Moreover, Defendants' written policies do not provide that employees must take

13

their first meal period before the end of the fifth hour of work, that employees are entitled to a second meal period if they work a shift of over ten hours, or that the second meal period must commence before the end of the tenth hour of work, unless waived.

67.    At all relevant times, Defendants failed to pay Plaintiff and the **Meal Period Sub-Class** members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided.

68.    Pursuant to Labor Code §§ 204, 218.6 and 226.7, Plaintiff, on behalf of himself and the **Meal Period Sub-Class** members, seek to recover unpaid premium wages, interest thereon, and costs of suit.

69.    Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and the **Meal Period Sub-Class** members, seeks to recover reasonable attorneys' fees.

<u>**SECOND CAUSE OF ACTION**</u>

**FAILURE TO PROVIDE REST PERIODS**

**(Lab. Code §§ 204, 223, 226.7 and 1198)**

**(Plaintiff and Rest Period Sub-Class)**

70.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

71.    At all relevant times, Plaintiff and the **Rest Period Sub-Class** members have been non-exempt employees of Defendants entitled to the full rest period protections of both the Labor Code and the applicable Wage Order.

72.    Section 12 of the applicable Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four-hour work period, or major fraction thereof, that must be in the middle of each work period insofar as practicable.

73.    Labor Code § 226.7 and § 12 of the applicable Wage Order both prohibit employers from requiring employees to work during required rest periods and require employers to pay non-exempt employees an hour of premium wages at the employees' regular rates of pay, on each workday that the employee is not provided with the required rest period(s).

74. Compensation for missed rest periods constitutes wages within the meaning of Labor Code § 200.

75. Labor Code § 1198 makes it unlawful to employ a person under conditions that violate the Wage Order.

76. Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing members of the **Rest Period Sub-Class** with net rest period of at least ten minutes for each four-hour work period, or major fraction thereof, as required by the applicable Wage Order.

77. At all relevant times, Defendants failed to pay Plaintiff and the **Rest Period Sub-Class** members additional premium wages when required rest periods were not provided.

78. Specifically, Defendants written policies do not provide that employees may take a rest period for each four hours worked, or major fraction thereof, nor that rest periods should be taken in the middle of each work period insofar as practicable.

79. Pursuant to Labor Code §§ 204, 218.6 and 226.7, Plaintiff, on behalf of himself and **Rest Period Sub-Class** members, seeks to recover unpaid premium wages, interest thereon, and costs of suit.

80. Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **Rest Period Sub-Class** members, seeks to recover reasonable attorneys' fees.

<u>**THIRD CAUSE OF ACTION**</u>

**FAILURE TO PAY HOURLY AND OVERTIME WAGES**

**(Lab. Code §§ 223, 510, 1194, 1197 and 1198)**

**(Plaintiff and Hourly Employee Class)**

81. Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

82. At all relevant times, Plaintiff and **Hourly Employee Class** members are or have been non-exempt employees of Defendants entitled to the full protections of the Labor Code and the applicable Wage Order.

83. Section 2 of the applicable Wage Order defines "hours worked" as "the time during

15

1  which an employee is subject to the control of the employer, and includes all the time the employee

2  is suffered or permitted to work, whether or not required to do so."

3        84.    Section 4 of the applicable Wage Order requires an employer to pay non-exempt

4  employees at least the minimum wage set forth therein for all hours worked, which consists of all

5  hours that an employer has actual or constructive knowledge that employees are working.

6        85.    Labor Code § 1194 invalidates any agreement between an employer and an

7  employee to work for less than the minimum or overtime wage required under the applicable Wage

8  Order.

9        86.    Labor Code § 1194.2 entitles non-exempt employees to recover liquidated damages

10  in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the

11  underlying unpaid minimum wages and interest thereon.

12        87.    Labor Code § 1197 makes it unlawful for an employer to pay an employee less than

13  the minimum wage required under the applicable Wage Order for all hours worked during a payroll

14  period.

15        88.    Labor Code § 1197.1 provides that it is unlawful for any employer or any other

16  person acting either individually or as an officer, agent, or employee of another person to pay an

17  employee, or cause an employee to be paid, less than the applicable minimum wage.

18        89.    Labor Code § 1198 makes it unlawful for employers to employ employees under

19  conditions that violate the applicable Wage Order.

20        90.    Labor Code § 204 requires employers to pay non-exempt employees their earned

21  wages for the normal work period at least twice during each calendar month on days the employer

22  designates in advance and to pay non-exempt employees their earned wages for labor performed in

23  excess of the normal work period by no later than the next regular payday.

24        91.    Labor Code § 223 makes it unlawful for employers to pay their employees lower

25  wages than required by contract or statute while purporting to pay them legal wages.

26        92.    Labor Code § 510 and § 3 of the applicable Wage Order require employers to pay

27  non-exempt employees overtime wages of no less than one and one-half times the employees'

28  respective regular rates of pay for all hours worked in excess of eight hours in one workday, all

hours worked in excess of forty hours in one workweek, and for the first eight hours worked on the seventh consecutive day of one workweek.

93.     Labor Code § 510 and § 3 of the applicable Wage Order also require employers to pay non-exempt employees overtime wages of no less than two times the employees' respective regular rates of pay for all hours worked in excess of twelve hours in one workday and for all hours worked in excess of eight hours on a seventh consecutive workday during the workweek.

94.     Plaintiff is informed and believes that, at all relevant times, Defendants have applied centrally devised policies and practices to him and **Hourly Employee Class** members with respect to working conditions and compensation arrangements.

95.     At all relevant times, Defendants failed to pay hourly wages to Plaintiff and **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates.

96.     At all relevant times during the applicable limitations period, Defendants maintained a policy or practice of deducting one-half hour from Plaintiff's recorded hours on every workday for a meal period, regardless of whether or not Plaintiff was provided with a meal period.

97.     Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of deducting one-half hour from **Hourly Employee Class** members' recorded hours on every workday for a meal period, regardless of whether or not **Hourly Employee Class** members were provided with a meal period.

98.     At all relevant times, Defendants failed to pay hourly wages to Plaintiff for all time worked, including but not limited to, overtime wages at statutory and/or agreed rates by suffering or permitting her to work during unpaid meal periods and/or failing to properly pay Plaintiff for all overtime hours worked.

99.     Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not paying hourly wages to **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates by suffering or permitting them to work during unpaid meal periods.

100.     During the relevant time period, Defendants failed to pay Plaintiff and **Hourly**

**Employee Class** members all earned wages every pay period at the correct rates, including overtime rates, because Defendants directed, permitted, or otherwise encouraged Plaintiff and **Hourly Employee Class** members to perform off-the-clock work.

101.    As a result of Defendants' unlawful conduct, Plaintiff and **Hourly Employee Class** members have suffered damages in an amount subject to proof, to the extent they were not paid the full amount of wages earned during each pay period during the applicable limitations period, including overtime wages.

102.    Pursuant to Labor Code §§ 204, 218.6, 223, 510, 1194 and 1194.2, Plaintiff, on behalf of himself and **Hourly Employee Class** members, seeks to recover unpaid straight time and overtime wages, interest thereon, and costs of suit.

103.    The regular rate of pay under California law includes all remuneration for employment paid, on behalf of the employer, to the employee. This requirement includes but is not limited to, commissions, afternoon shift premiums, night premiums, temporary duty override, shared rewards, incentive-All About Cust, award, pay card value, premium override,  non-discretionary bonuses and/or other applicable remuneration.

104.    During the applicable limitations period, Defendants violated the rights of Plaintiff and **Hourly Employee Class** members under the above-referenced Labor Code sections by failing to pay them overtime wages for all overtime hours worked in violation of Labor Code §§ 510, 1194 and 1198 by not correctly calculating their regular rate of pay to include all applicable remuneration, including but not limited to, commissions, afternoon shift premiums, night premiums, temporary duty override, shared rewards, incentive-All About Cust, award, pay card value, premium override,  non-discretionary bonuses and/or other applicable remuneration.

105.    California law uses the terms "compensation" and "pay" interchangeably and requires that all applicable remuneration, including but not limited to, commissions, afternoon shift premiums, night premiums, temporary duty override, shared rewards, incentive-All About Cust, award, pay card value, premium override,  non-discretionary bonuses and/or other applicable remuneration, be included when calculating an employee's regular rate of pay.

106.    At all relevant times, Defendants paid Plaintiff premium wages based on a rate of

1  compensation that did not reflect, among other things, commissions, afternoon shift premiums,

2  night premiums, temporary duty override, shared rewards, incentive-All About Cust, award, pay

3  card value, premium override,  non-discretionary bonuses and/or other applicable remuneration as

4  required by Labor Code § 226.7(b) and §§ 11 and 12 of the applicable Wage Order on the occasions

5  when Defendants paid him premium wages in lieu of meal and/or rest periods.

6         107.    Plaintiff is informed and believes, and thereupon alleges, that, at all relevant times

7  during the applicable limitations period, Defendants maintained a policy or practice of paying

8  **Hourly Employee Class** members premium wages based on rates of compensation that have not

9  reflected commissions, afternoon shift premiums, night premiums, temporary duty override, shared

10 rewards, incentive-All About Cust, award, pay card value, premium override,  non-discretionary

11 bonuses and/or other applicable remuneration as required by Labor Code § 226.7(b) and §§ 11 and

12 12 of the applicable Wage Order on the occasions when Defendants paid them premium wages in

13 lieu of meal and/or rest periods.

14        108.    Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial

15 benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **Hourly**

16 **Employee Class** members, seeks to recover reasonable attorneys' fees.

17                          <u>**FOURTH CAUSE OF ACTION**</u>

18                           **FAILURE TO INDEMNIFY**

19                             **(Lab. Code § 2802)**

20               **(Plaintiff and Expense Reimbursement Class)**

21        109.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

22        110.    Labor Code section 2802(a) states:

23        An employer shall indemnify his or her employee for all necessary expenditures or
          losses incurred by the employee in direct consequence of the discharge of his or her
24        duties, or of his or her obedience to the directions of the employer, even though
          unlawful, unless the employee, at the time of obeying the directions, believed them to
25        be unlawful.

26        111.    At all relevant times during the applicable limitations period, Plaintiff and the

27 **Expense Reimbursement Class** members incurred necessary business-related expenses and costs,

28 including but not limited to, personal cell phone expenses and personal protective equipment,

including steel toed boots, safety vests, marshaling wands, knee pads, earmuffs, and gloves that were part of their uniform.

112.    Plaintiff is informed and believes and thereupon alleges that the reimbursement paid by Defendants was insufficient to indemnify Plaintiff for all necessary expenses incurred in the discharge of their duties.

113.    Plaintiff is informed and believes and thereupon alleges that the reimbursement paid by Defendants was insufficient to indemnify **Expense Reimbursement Class** members for all necessary business expenses incurred in the discharge of their duties.

114.    At all relevant times during the applicable limitations period, Defendants required Plaintiff and the **Expense Reimbursement Class** members to pay for expenses and/or losses caused by Defendants' want of ordinary care. Defendants failed to indemnify Plaintiff and **Expense Reimbursement Class** members for all such expenditures.

115.    At all relevant times during the applicable limitations period, Defendants required Plaintiff and **Expense Reimbursement Class** members to purchase and maintain personal protective equipment and/or uniforms and apparel unique to Defendants at Plaintiff's and **Expense Reimbursement Class** members' expense. Defendants failed to indemnify Plaintiff and **Expense Reimbursement Class** members for all such expenditures.

116.    At all relevant times during the applicable limitations period, Defendants required Plaintiff and **Expense Reimbursement Class** members to pay for expenses as a result of the use of their personal cell phones for work purposes for the benefit of Defendants and at Plaintiff's and **Expense Reimbursement Class** members' expense.  Defendants failed to indemnify Plaintiff and **Expense Reimbursement Class** members for all such expenditures.

117.    Plaintiff is informed and believes that, during the applicable limitations period, Defendants maintained a policy or practice of not reimbursing Plaintiff and **Expense Reimbursement Class** members for all necessary business expenses.

118.    Accordingly, Plaintiff and **Expense Reimbursement Class** members are entitled to restitution for all unpaid amounts due and owing within four years of the date of the filing of the original Complaint and until the date of entry of judgment.

119.   Plaintiff, on behalf of himself , and **Expense Reimbursement Class** members, seeks interest thereon and costs pursuant to Labor Code § 218.6 and reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5.

## FIFTH CAUSE OF ACTION

### FAILURE TO PROVIDE ACCURATE WRITTEN WAGE STATEMENTS

### (Lab. Code § 226)

### (Plaintiff and Wage Statement Penalties Sub-Class)

120.   Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

121.   Labor Code § 226(a) states:

An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment.  The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.  For purposes of this subdivision, 'copy' includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision.

122.   The Division of Labor Standards Enforcement ("DLSE") has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at no expense to the employee. (DLSE Opinion

Letter July 6, 2006.) Defendants provided Plaintiff and putative class members with electronic wage statements. But as the Division of Labor Standards Enforcement has advised employers, this is only permissible if the employer gives the employees the ability to elect to receive paper wage statements, which Defendants did not do.

123.    Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have failed to provide **Wage Statement Penalties Sub-Class** members with written wage statements as described above.

124.    Plaintiff is informed and believes that Defendants' failure to provide him and **Wage Statement Penalties Sub-Class** members with accurate written wage statements were intentional in that Defendants had the ability to provide them with accurate wage statements but had intentionally provided them with written wage statements that Defendants knew do not comply with Labor Code § 226(a).

125.    Plaintiff and **Wage Statement Penalties Sub-Class** members have suffered injuries, in that Defendants have violated Plaintiff's and **Wage Statement Penalties Sub-Class** members' legal rights to receive accurate wage statements and have misled them about their actual rates of pay and wages earned. In addition, inaccurate information on their wage statements have prevented immediate challenges to Defendants' unlawful pay practices, has required discovery and mathematical computations to determine the amount of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or has led to the submission of inaccurate information about wages and deductions to federal and state government agencies.

126.    Pursuant to Labor Code § 226(e), Plaintiff, on behalf of himself and **Wage Statement Penalties Sub-Class** members, seeks the greater of actual damages or fifty dollars ($50.00) for the initial pay period in which a violation of Labor Code section 226(a) occurred and one hundred dollars ($100.00) for each subsequent pay period in which a violation of Labor Code § 226(a) occurred, not to exceed an aggregate penalty of four thousand dollars ($4,000.00) per class member.

127.    Pursuant to Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff, on behalf of himself and **Wage Statement Penalties Sub-**

1  **Class** members, seek awards of reasonable attorneys' fees and costs.

2  <u>**SIXTH CAUSE OF ACTION**</u>

3  **FAILURE TO TIMELY PAY ALL FINAL WAGES**

4  **(Lab. Code §§ 201–203)**

5  **(Plaintiff and Waiting Time Penalties Sub-Class)**

6  128.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

7  129.    At all relevant times, Plaintiff and **Waiting Time Penalties Sub-Class** members

8  have been entitled, upon the end of their employment with Defendants, to timely payment of all

9  wages earned and unpaid before termination or resignation.

10  130.    At all relevant times, pursuant to Labor Code § 201, employees who have been

11  discharged have been entitled to payment of all final wages immediately upon termination.

12  131.    At all relevant times, pursuant to Labor Code § 202, employees who have resigned

13  after giving at least seventy-two (72) hours' notice of resignation have been entitled to payment of

14  all final wages at the time of resignation.

15  132.    At all relevant times, pursuant to Labor Code § 202, employees who have resigned

16  after giving less than seventy-two (72) hours' notice of resignation have been entitled to payment of

17  all final wages within seventy-two (72) hours' of giving notice of resignation.

18  133.    During the applicable limitations period, Defendants failed to pay Plaintiff all of his

19  final wages in accordance with the Labor Code by failing to timely pay him all of his final wages.

20  134.    Plaintiff is informed and believes that, at all relevant times during the applicable

21  limitations period, Defendants have failed to timely pay **Waiting Time Penalties Sub-Class**

22  members all of their final wages in accordance with the Labor Code.

23  135.    Plaintiff is informed and believes that, at all relevant times during the applicable

24  limitations period, Defendants have maintained a policy or practice of paying **Waiting Time**

25  **Penalties Sub-Class** members their final wages without regard to the requirements of Labor Code

26  §§ 201 or 202 by failing to timely pay them all final wages.

27  136.    Plaintiff is informed and believes and thereupon alleges that Defendants' failure to

28  timely pay all final wages to him and **Waiting Time Penalties Sub-Class** members have been

willful in that Defendants have the ability to pay final wages in accordance with Labor Code §§ 201 and/or 202 but have intentionally adopted policies or practices that are incompatible with those requirements.

137.    Pursuant to Labor Code §§ 203 and 218.6, Plaintiff, on behalf of himself and **Waiting Time Penalties Sub-Class** members, seeks waiting time penalties from the respective dates that their final wages had first become due until paid, up to a maximum of thirty days, and interest thereon.

138.    Pursuant to Labor Code § 226, Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff, on behalf of himself and **Waiting Time Penalties Sub-Class** members, seek awards of reasonable attorneys' fees and costs.

<u>**SEVENTH CAUSE OF ACTION**</u>

**FAILURE TO PAY ALL EARNED VACATION TIME**

**(Lab. Code §§ 201, 203, 227.3)**

**(Plaintiff and Vacation Time Sub-Class)**

139.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

140.    At all relevant times, Plaintiff and **Vacation Time Sub-Class** members have been entitled, upon the end of their employment with Defendants, to payment of all vested vacation time.

141.    Vacation pay is considered a form of wages under Labor Code section 200. Pursuant to the California Supreme Court's decision in *Suastez v. Plastic Dress Up Co.*, 31 Cal. 3d 774 (1982) and Labor Code section 227.3, vested vacation pay and other similar forms of paid time off earned based on labor performed are considered wages that cannot be subject to forfeiture without compensation for forfeited days at the applicable rates required by law.

142.    Labor Code section 227.3 states, in relevant part: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time

1 | upon termination. The Labor Commissioner or a designated representative, in the resolution of any

2 | dispute with regard to vested vacation time shall apply the principles of equity and fairness."

3 |      143.    At all relevant times during the applicable limitations period, Defendants maintained

4 | a policy or practice that provided for the unlawful forfeiture of vested vacation pay in violation of

5 | *Suastez* and Labor Code section 227.3.

6 |      144.    Pursuant to Labor Code §§ 201 and 227.3, Plaintiff, on behalf of himself and

7 | **Vacation Time Sub-Class** members, seeks all unpaid wages for earned vacation time, interest

8 | thereon.

9 |      145.    Pursuant to Labor Code § 218.5, Plaintiff, on behalf of himself and **Vacation Time**

10 | **Sub-Class** members, seeks to recover reasonable attorneys' fees and costs.

11 | **<u>SEVENTH CAUSE OF ACTION</u>**

12 | **UNFAIR COMPETITION**

13 | **(Bus. & Prof. Code §§ 17200 *et seq.*)**

14 | **(Plaintiff and UCL Class)**

15 |      146.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

16 |      147.    Business and Professions Code § 17200 defines "unfair competition" to include any

17 | unlawful business practice.

18 |      148.    Business and Professions Code §§ 17203–17204 allow a person who has lost money

19 | or property as a result of unfair competition to bring a class action in accordance with Federal Rules

20 | of Civil Procedure 23 to recover money or property that may have been acquired from similarly

21 | situated persons by means of unfair competition.

22 |      149.    California law requires employers to pay hourly, non-exempt employees for all hours

23 | they are permitted or suffered to work, including hours that the employer knows or reasonably

24 | should know that employees have worked.

25 |      150.    Plaintiff, on behalf of himself and the **UCL Class** members, re-alleges and

26 | incorporates the FIRST, SECOND, and THIRD causes of action herein.

27 |      151.    Plaintiff lost money and/or property as a result of the aforementioned unfair

28 | competition.

152.    Defendants have or may have acquired money by means of unfair competition.

153.    Plaintiff is informed and believes and thereupon alleges that, by committing the Labor Code violations described in this Complaint, Defendants violated Labor Code §§ 215, 216, 225, 226.6, 354, 408, 553, 1175, 1199 and 2802. Defendants thus committed misdemeanors by violating the Labor Code as alleged herein.

154.    Defendants have committed criminal conduct through their policies and practices of, *inter alia*, failing to comport with their affirmative obligations as an employer to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five or more hours, by failing to pay non-exempt employees for all hours worked, and by failing to reimburse them for all expenses.

155.    At all relevant times, Plaintiff and **UCL Class** members have been non-exempt employees and entitled to the full protections of both the Labor Code and the applicable Wage Order.

156.    Defendants' unlawful conduct as alleged in this Complaint amounts to and constitutes unfair competition within the meaning of Business and Professions Code section 17200 *et sequitur*. Business and Professions Code §§ 17200 *et sequitur* protect against unfair competition and allow a person who has suffered an injury-in-fact and has lost money or property as a result of an unfair, unlawful, or fraudulent business practice to seek restitution on behalf of himself and on behalf of similarly situated persons in a class-action proceeding.

157.    As a result of Defendants' violations of the Labor Code during the applicable limitations period, Plaintiff has suffered an injury-in-fact and has lost money or property in the form of earned wages.  Specifically, Plaintiff has lost money or property as a result of Defendants' conduct.

158.    Plaintiff is informed and believes that other similarly situated persons have been subject to the same unlawful policies or practices of Defendants.

159.    Due to the unfair and unlawful business practices in violation of the Labor Code, Defendants have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their legal obligations.

160.    California's Unfair Competition Law ("UCL") permits civil recovery and injunctive relief for "any unlawful, unfair or fraudulent business act or practice," including a practice or act that violates, or is considered unlawful under, any other state or federal law.

161.    Accordingly, pursuant to Business & Professions Code §§ 17200 and 17203, Plaintiff requests the issuance of temporary, preliminary, and permanent injunctive relief enjoining Defendants, and each of them, and their agents and employees, from further violations of the Labor Code and applicable Industrial Welfare Commission Wage Orders, and upon a final hearing, an order permanently enjoining Defendants, and each of them, and their respective agents and employees, from further violations of the Labor Code and applicable Industrial Welfare Commission Wage Orders.

162.    Pursuant to Business and Professions Code § 17203, Plaintiff, on behalf of himself and **UCL Class** members, seeks declaratory relief and restitution of all monies rightfully belonging to them that Defendants did not pay them or otherwise retained by means of its unlawful and unfair business practices.

163.    Pursuant to Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff and **UCL Class** members are entitled to recover reasonable attorneys' fees in connection with their unfair competition claims.

## EIGHTH CAUSE OF ACTION

### CIVIL PENALTIES

### (Lab. Code §§ 2698 *et seq.*)

164.    Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

165.    During the applicable limitations period, Defendants have violated Labor Code §§ 201, 202, 203, 204, 223, 226(a), 226.7, 227.3, 246, 510, 512, 1194, 1197, 1198, and 2802.

166.    Labor Code §§ 2699(a) and (g) authorize an aggrieved employee, on behalf of himself and other current and former employees, to bring a representative civil action to recover civil penalties pursuant to the procedures set forth in Labor Code § 2699.3 that may, but need not, be brought or maintained as a class action pursuant to Federal Rules of Civil Procedure 23.

167.    Plaintiff, a former employee against whom Defendants committed one or more of the

FIRST AMENDED CLASS AND REPRESENTATIVE-ACTION COMPLAINT

alleged Labor Code violations during the applicable limitations period, is an aggrieved employee within the meaning of Labor Code § 2699(c).

168.    Plaintiff has complied with the procedures for bringing suit specified in Labor Code § 2699.3. Notice was provided to the California Labor & Workforce Development Agency ("LWDA") and 65 days have elapsed without the LWDA providing Plaintiff with any notice of an intent to investigate.

169.    Pursuant to Labor Code sections 2699(a) and (f), Plaintiff seeks the following civil penalties for Defendants' violations of Labor Code §§ 201, 202, 203, 204, 223, 226(a), 226.7, 227.3, 246, 510, 512, 1194, 1197, 1198 and 2802:

      i.    For violations of Labor Code §§ 201, 202, 203, 212, 226.7, 227.3, 246, 1194, 1198 and 2802, one hundred dollars ($100) for each employee per pay period for each initial violation and two hundred dollars ($200) for each employee per pay period for each subsequent violation (penalties set by Labor Code § 2699(f)(2));

      ii.    For violations of Labor Code § 203, a penalty in an amount not exceeding thirty (30) days' pay as waiting time (penalties set by Labor Code § 256);

      iii.    For violations of Labor Code § 204, one hundred dollars ($100) for each employee for each initial violation that was neither willful nor intentional, two hundred dollars ($200) for each employee, plus 25% of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and two hundred dollars ($200) for each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code § 210);

      iv.    For violations of Labor Code § 223, one hundred dollars ($100) for each employee for each initial violation that was neither willful nor intentional, two hundred dollars ($200) for each employee, plus twenty-five percent (25%)

(25%) of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and two hundred dollars ($200) for each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code § 225.5);

v.      For violations of Labor Code § 226(a), if this action is deemed to be an initial citation, two hundred and fifty dollars ($250) for each employee for each violation. Alternatively, if an initial citation or its equivalent occurred before the filing of this action, one thousand dollars ($1,000) for each employee for each violation (penalties set by Labor Code § 226.3);

vi.     For violation of Labor Code §§ 510 and 512, fifty dollars ($50) for each employee for each initial pay period for which the employee was underpaid, and one hundred dollars ($100) for each employee for each subsequent pay period for which the employee was underpaid (penalties set by Labor Code § 558);

vii.    For violations of Labor Code § 1197, one hundred dollars ($100) for each aggrieved employee for each initial violation of Labor Code § 1197 that was intentional and two hundred and fifty dollars ($250) for each aggrieved employee per pay period for each subsequent violation of Labor Code § 1197, regardless of whether the initial violation was intentional (penalties set by Labor Code § 1197.1);

viii.   Pursuant to Labor Code § 2699(g), Plaintiff seeks an award of reasonable attorneys' fees and costs in connection with Plaintiff's claims for civil penalties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for relief and judgment against Defendants as follows:

1      (1)    An order that the action be certified as a class action;

2      (2)    An order that Plaintiff be appointed class representative;

3      (3)    An order that counsel for Plaintiff be appointed class counsel;

4      (4)    Unpaid wages;

5      (5)    Actual damages;

6      (6)    Liquidated damages;

7      (7)    Restitution;

8      (8)    Declaratory relief;

9      (9)    Pre-judgment interest;

10      (10)    Statutory penalties;

11      (11)    Civil penalties;

12      (12)    Costs of suit;

13      (13)    Reasonable attorneys' fees; and

14      (14)    Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, all other similarly situated, and the general public, hereby demands a jury trial on all issues so triable.

Dated:  November 25, 2024             SETAREH LAW GROUP

*/s/ Shaun Setareh*
SHAUN SETAREH
THOMAS SEGAL
FARRAH GRANT
Attorneys for Plaintiff
MARVIN TOLEDO

FIRST AMENDED CLASS AND REPRESENTATIVE-ACTION COMPLAINT