**SETAREH LAW GROUP**
Shaun Setareh, Esq. (SBN 204514)
Thomas Segal, Esq. (SBN 222791)
Farrah Grant Esq. (SBN 293898)
420 N. Camden Drive, Suite 100
Beverly Hills, California 90210
Telephone: (310) 888-7771
Facsimile: (310) 888-0109
shaun@setarehlaw.com
thomas@setarehlaw.com
farrah@setarehlaw.com

Attorneys for Plaintiff
MARVIN TOLEDO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN TOLEDO, an individual, on behalf of himself and all other similarly situated non-exempt current and former employees,<br><br>               Plaintiff(s),<br><br>v.<br><br>DELTA AIR LINES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>           Defendants. | CASE No. 3:22-cv-00081-AMO<br><br>**NOTICE OF MOTION AND RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHAUN SETAREH IN SUPPORT THEREOF; DECLARATION OF MIKE MOORE; DECLARATION OF FARRAH GRANT; DECLARATION OF MARVIN TOLEDO; DECLARATION OF ANDREW FREDERICK; {PROPOSED} ORDER**<br><br>Date: August 28, 2025<br>Time: 2:00 p.m.<br>Courtroom: 10<br><br>Action Filed: December 3, 2021 |

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on August 28, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 10 of this Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, Plaintiff Marvin Toledo, on behalf of himself and all others similarly situated and the general public ("Plaintiff"), seeks an order that this case be certified as a class action for the purposes of settlement under Federal Rule of Civil Procedure ("Rule") 23, on behalf of a settlement class comprised of Plaintiff and all other persons similarly situated, for an order directing notice to the class, and for a scheduling order setting a Fairness Hearing for final approval of the proposed settlement.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Shaun Setareh, the Declaration of Farrah Grant, the Declaration of Marvin Toledo and all documents and arguments in support thereof.

Plaintiff requests the following relief:

1.      Preliminary approval of the Amended Stipulation of Class Action and Representative Action Settlement and Release, ("Settlement") attached as Exhibit 1 to the Declaration of Shaun Setareh ("Setareh Decl."), and all related notice and other deadlines as set forth in the agreement or as otherwise ordered by the Court subject to the terms and conditions of the agreement so that Plaintiff may then move the Court for Final Approval of the Settlement Agreement;

2.      Conditional certification of the Settlement Class as defined in the Settlement;

3.      The appointment of Shaun Setareh, Thomas Segal, and Farrah Grant of Setareh Law Group  as Settlement Class Counsel;

4.      The appointment of Plaintiff Marvin Toledo as the Class Representative;

5.      An Order directing the dissemination of the notice of class action settlement to the Settlement Class, via United States First-Class Mail as proscribed by the Settlement;

6.      Appointment of Phoenix Settlement Administration as Settlement

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1  Administrator;

2        7.      An Order setting a schedule for the dissemination of notice to the Settlement

3  Class; deadlines for Settlement Class Members to opt-out or object to the Settlement; and for

4  a Fairness Hearing to address final approval of the Class Action Settlement Agreement

5  following the notice period.

6        8.      Any other relief that the Court deems just and equitable under the

7  circumstances.

8

9  DATED: June 2, 2025                    SETAREH LAW GROUP

10

11                                       */s/ Shaun Setareh*_____
                                         SHAUN SETAREH

12                                       THOMAS SEGAL
                                         FARRAH GRANT

13                                       Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY....3

        A.      PLEADINGS AND MATERIAL ALLEGATIONS ..........3

        B.      DISCOVERY ..................................................................5

        C.      THE PARTIES' MEDIATION EFFORTS .......................5

III.    SUMMARY OF SETTLEMENT TERMS ...................................5

        A.      MAXIMUM SETTLEMENT AMOUNT, ATTORNEY
                FEES AND COSTS, CLASS REPRESENTATIVE
                SERVICE AWARD AND PAGA ALLOCATION ...........5

        B.      CLASS RELEASES AND ALLOCATION ......................6

                1.      PAGA Group .........................................................7

        C.      SETTLEMENT ADMINISTRATION AND NOTICE......8

        D.      DISPOSITION OF UNCASHED CHECKS AND
                RESERVE FUND ..............................................................8

IV.     LEGAL STANDARD FOR PRELIMINARY APPROVAL OF
        CLASS ACTION SETTLEMENTS IN THE NORTHERN
        DISTRICT ..................................................................................9

V.      THE COURT SHOULD PRELIMINARILY APPROVE THE
        SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND
        ADEQUATE" UNDER RULE 23(E) (2) AND THE
        *CHURCHILL* FACTORS .........................................................10

        A.      Class Counsel and Plaintiff Adequately Represented the
                Class ................................................................................10

        B.      The Proposal Was Negotiated at Arm's Length................10

        C.      The Relief Provided for the Class Is Adequate.................11

                1.      The Relief for the Claims Are Adequate, Given the
                        Costs, Risks, and Delay of Trial and Appeal..........11

                2.      The Proposed Method of Distributing Relief to the
                        Class is Effective. ................................................13

                3.      The Proposed Award of Attorney Fees is Fair. .......13

        D.      Class Members Will Be Treated Equitably Relative to One
                Another..............................................................................17

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

VI.   THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE
.................................................................................18

    A.   Information About the Settlement....................................18

        1.   Differences Between the Settlement Class and the
Class Proposed in the Complaint............................18

        2.   Differences in the Claims to be Released and the
Claims Pled..........................................................19

        3.   Other Cases Affected by the Settlement.................21

    B.   Settlement Administration .................................................23

    C.   Notice. ..............................................................................23

    D.   Opt Outs. ..........................................................................24

    E.   Objections..........................................................................24

    F.   Service Award. ..................................................................24

    G.   Class Action Fairness Act (CAFA) and Similar
Requirements......................................................................25

    H.   Comparable Outcome.........................................................25

    I.   Electronic Versions. .........................................................26

    J.   Overlapping Cases. ...........................................................26

VII.  THE PAGA ALLOCATION IS PROPER ..................................26

VIII. THE COURT SHOULD CERTIFY THE SETTLEMENT
CLASS, AND APPOINT PLAINTIFF AND CLASS COUNSEL
TO REPRESENT THEM .............................................................28

    A.   The Class Should Be Conditionally Certified For Purposes
of Settlement .....................................................................28

        1.   Standard for Conditional Class Certification Upon
Settlement ............................................................28

        2.   Numerosity.............................................................29

        3.   Adequacy of Representation...................................29

        4.   Typicality ..............................................................29

        5.   Commonality .........................................................29

IX.   CONCLUSION ...........................................................................30

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

# TABLE OF AUTHORITIES

## Cases

*Amaral v. Cintas Corp.No. 2*,
   163 Cal.App.4th 1157 (2008) ................................................................ 27

*Amaro v. Anaheim Arena Management*,
   69 Cal. App. 4th 521 (2021) .................................................................... 8

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................... 29

*Chavez v. Netflix, Inc.*,
   162 Cal. App. 4th 43 (2008) .................................................................. 16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................. 10

*Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39, n. 33 (2014) .................... 11, 12

*Fernandez v. Victoria Secret Stores, LLC*,
   2008 WL 8150856 (C.D. Cal. 2008) ...................................................... 17

*Frlekin v. Apple*,
   2021 WL 6126961 (N.D. Cal. 2021) ...................................................... 26

*In re NVIDIA GPU Litig.*,
   539 F. App'x 822 (9th Cir. 2013) .......................................................... 11

*In re Quantum Health Resources, Inc.*
   962 F. Supp. 1254 (1997) ....................................................................... 17

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................. 9

*LDK Solar Secs. Litig.*, No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168, *6 ...... 13

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ................................................................. 10

*Nachsin v. AOL LLC*,
   663 F.3d 1034 (9th Cir. 2011) ................................................................. 9

*Naranjo v. Spectrum Security Services, Inc.*, 17 Cal.5th 1056, 1088 (2024) ............... 13

*Norton v. LVNV Funding, LLC*,
   2021 WL 3129568 (N.D. Cal. 2021) ...................................................... 10

*O'Connor v. Uber Technologies, Inc.*,
   201 F.Supp.3d 1110 (N.D. Cal. 2016) ................................................... 27

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) .......................................................... 29

*Rangel v. PLS Check Cashers of California Inc.*,
      899 F.3d 1106 (9th Cir. 2018)..........................................................................20

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (2009.) ..................................12

*Saechao v. Landrys, Inc.*,
      2016 WL 3227180 (N.D. Cal. 2016) ................................................................27

*Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295
      F.R.D. 438, 453-54 .............................................................................................13

*Viceral v. Mistras Group, Inc.*,
      2016 WL5907869 (N.D. Cal. 2016) ..................................................................27

*Vizcaino v. Microsoft Corp.*,
      290 F.3d 1043 (9th Cir. 2002)...........................................................................16


**Statutes**

California Supreme Court held that section 226 penalties like section 203..................13

LabOR Code § 2699(e)(2) .................................................................................................27

Labor Code § 2699(f)(2) ....................................................................................................27

Labor Code section 203 .....................................................................................................12

Labor Code section 203 and 226........................................................................................12

Labor Code section 226(e).................................................................................................12


**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................................29, 30

Fed. R. Civ. P. 23(a)(2) ......................................................................................................30

Fed. R. Civ. P. 23(a)(3)......................................................................................................30

Fed. R. Civ. P. 23(b)(3)......................................................................................................30

Fed. R. Civ. P. 23(e)........................................................................................................9, 10

Fed. R. Civ. P. 23(e)(1)(A)..................................................................................................9

Fed. R. Civ. P. 23(e)(1)(B)..................................................................................................9

Fed. R. Civ. P. 23(e)(2)...............................................................................9, 10, 11, 18

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................................11

Fed. R. Civ. P. 23(e)(3)...........................................................................................10, 11

Rule 23(a)(4)....................................................................................................................30

# I.   INTRODUCTION

This renewed motion responds to the Court's Order Denying Preliminary Approval. A chart showing where the renewed motion addresses the Court's concerns is below:

|   | Issue to address | Where addressed |
|---|---|---|
| 1. | Explain the basis for the estimate of 5000 class members including how potential class members have or will be identified. | Mot. at 18:16-19:9. |
| 2. | Explain why the scope of the class is narrower, including the exclusion of people hired through staffing agencies. | Mot. at 18:17-19:9. |
| 3. | Provide comparator cases in which counsel was awarded at least one third of the settlement amount including at least one comparator California case in which attorney fees were awarded at a comparable rate. | Mot. at 14:20-15:3. |
| 4. | Explain why the term that Defendant will not oppose the requested attorney fees does not signal collusion. | Mot. at 13:11-14:19. |
| 5. | Provide at least one comparator case where the court granted a relatively low PAGA settlement in relation to a Rule 23 class action settlement. | Mot. at 27:12-25. |
| 6. | More thoroughly explain the rationale for reducing the PAGA claim from its full verdict value. | Mot. at 26:16-28:9. |

| 7. | Notify the Court whether the LWDA has responded to the proposed settlement including by promptly lodging the LWDA's response with the Court. | Mot. at 28:10-15 |
|---|---|---|
| 8. | Provide cases where courts have awarded a $10,000 service award, and more description of the work done by Toledo to warrant such an award | Mot. at 24:13-25:14 |
| 9. | Explain why the broad releases in the Settlement Agreement are appropriate and estimate the verdict value of all claims released in any renewed motion. | Mot. at 19:11-21:3 |
| 10. | Explain how or if counsel in the related cases participated in the settlement reached here or how the proposed settlement in this case will impact the relief sought in those other cases. | Mot. at 21:5-23:12. |
| 11. | Address whether a Notice of Pendency of Other Action Should be Filed in relation to *Rajdeep Sandhu v. Delta Airlines, Inc.* | Mot. at 21:20-22:3. |
| 12. | Comply with the Procedural Guidance as to *Gurzenski v. Delta Airlines, Inc.,* Case No. 21STCV19287 | Mot. at 21:12-20. |

Plaintiff submits that the settlement is fair, reasonable and adequate, and should be preliminarily approved. The Agreement provides for a $12 million-dollar non-reversionary settlement, Class

members will have to make claims but instead will be mailed checks directly. The estimated average net settlement share is $1488.20. Any uncashed checks will not revert to the defendant but instead will be distributed to the University of California Berkeley's Institute for Research on Labor and Employment as a *cy pres* recipient.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    PLEADINGS AND MATERIAL ALLEGATIONS

Plaintiff Marvin Toledo initiated the Action in the Superior Court of the State of California, County of San Francisco, on December 3, 2021.  Delta subsequently removed the Action to the United States District Court for the Northern District of California, where the Action is currently pending.  Plaintiff has brought the Action on behalf of himself, other allegedly aggrieved employees and as proxy for the State of California, and the following individuals: all current and former non-exempt employees of Defendant in California from December 3, 2017 to the present.  The Action alleges various wage and hour claims against Defendant, including claims for failure to provide meal/rest periods, failure to pay wages, failure to reimburse business expenses, failure to provide accurate written wage statements, failure to timely pay all final wages, unfair business practices under California Bus. & Prof. Code §§ 17200-17208, and civil penalties under Labor Code §§ 2699 *et seq*.  The Action asserts claims for unpaid wages, statutory penalties, civil penalties under PAGA, restitution, interest, attorneys' fees, and costs.  Prior to filing this Action, Plaintiff sent notice of alleged Labor Code violations to the LWDA pursuant to Labor Code §2699.3(1).  Declaration of Shaun Setareh ("Setareh Decl.") ¶ 4.

On November 22, 2024, the parties filed a stipulation for Plaintiff to have leave to file a First Amended Complaint which "adds certain factual allegations and claims comporting with the scope of the Released Class and PAGA Claims and Plaintiff's LWDA Notice." ECF No. 56. The Court granted the stipulation on November 25, 2024. ECF No. 58. Plaintiff filed the First Amended Complaint on November 25, 2024. ECF No. 59.

Plaintiff alleges that while working as an hourly, non-exempt employee, Plaintiff and putative class members were sometimes unable to take 30-minute uninterrupted meal breaks and 10-minute uninterrupted rest breaks in part due to: (1) Defendant's policy of not scheduling breaks as part of each

1   shift; (2) understaffing; (3) imposing so much work on each employee such that it made it unlikely that

2   an employee would be able to take their breaks if they wanted to finish their work on time; and (4) a

3   flawed formal written meal and rest period policy that did not encourage employees to take their breaks.

4   (*See, generally*, First Amended Complaint, Exh. 3 to Settlement Agreement.)   Plaintiff further asserts

5   that Plaintiff and putative class members were not paid for off-the-clock work performed, such as time

6   spent undergoing security checks and performing work after their shift ends, for example when planes

7   arrive late at the end of a shift.   Plaintiff also alleges that Defendant failed to correctly calculate the

8   regular rate of pay to include all applicable remuneration, including non-discretionary bonuses. In

9   addition to overtime, meal premiums are required to be paid at the regular rate of pay. See *Ferra v.*

10  *Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 489 P.3d 1166 (2021). Pursuant to Lab. Code §246(l)

11  (1), sick pay must also be paid at the regular rate of pay. Plaintiff also alleges that Plaintiff and putative

12  class members were not reimbursed for business expenses, such as personal protective equipment and

13  cell phones. Finally, Plaintiff alleged that Defendant maintained a policy or practice that provided for

14  the unlawful forfeiture of vested vacation pay. Setareh Decl. ¶ 13.[1]

15          Defendant denied all of Plaintiff's allegations.   Defendant states that it had compliant meal and

16  rest policies.   Defendant contended that this included an opportunity for meal periods of at least 30

17  minutes within the first 5 hours of work, and 10-minute rest periods for every 3½ hours of work.

18  Defendant argued that this would defeat Plaintiff's claims because under *Brinker Rest. Corp. v. Superior*

19  *Court*, 53 Cal. 4th 1004, 1040 (2012), while an employer must provide employees with the opportunity

20  to take meal and rest breaks, it need not ensure that the employees actually do so; an employer satisfies

21  its obligations if it relieves its employees of all duties, relinquishes control over their activities, and

22  permits them a reasonable opportunity to take uninterrupted breaks. They also argued that Plaintiff's rest

23  period claim is also not amenable to class treatment as there are too many individualized issues for the

24  same reasons. Defendant states that any time spent going through security checks was extremely small.

25  Defendant stated that it had policies prohibiting off-the-clock work and required employees to report

26  any off-the-clock work performed.   Defendant stated that it properly calculated bonuses into the regular

27
---
28      [1] Upon review of Delta's vacation policies, Plaintiff's counsel determined that there was no
unlawful forfeiture of vacation pay. Setareh Decl. ¶ 13.

rate of pay. Defendant stated that it reimbursed employees for business expenses as needed and did not require employees to forfeit vacation pay.  Setareh Decl. ¶ 14.

### B.    DISCOVERY

Through substantial and extensive formal and informal discovery, Defendant provided Plaintiff's counsel written policies relating to employees' time worked, rates of pay, workweeks, wages paid, and meal and rest break premiums paid during the Class Period, among other records. Both parties propounded and responded to written discovery requests. Setareh Decl. ¶ 5.

Prior to settlement, Plaintiff obtained class contact information, a sampling of time-keeping and payroll data, and documents regarding Delta's wage and hour policies. *Id.* ¶ 6

As part of pre-class certification discovery, Plaintiff's counsel interviewed a number of putative class members as percipient witnesses in this action and obtained declarations to be used in support of class certification. *Id.* ¶ 7. Additionally, Delta deposed Plaintiff Marvin Toledo. *Id.* ¶ 8.

Plaintiff's counsel retained two experts to create damages models. Sridhar Srinivasan was hired for the first mediation and James Toney for the second mediation. Id. ¶ 9

### C.    THE PARTIES' MEDIATION EFFORTS

On May 12, 2023, the Parties attended a full-day mediation conducted by an experienced wage and hour mediator, Michael Dickstein.  Although the first mediation did not result in settlement, the Parties continued to engage in settlement discussions after the mediation session ended.  Through these settlement discussions, the Parties agreed to participate in a further mediation session.  On August 13, 2024, the Parties attended a second full-day mediation conducted by another experienced wage and hour mediator, Jeff Ross. Jeff Ross made a mediator's proposal that resulted in this Settlement. *Id.* ¶¶ 10-12.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    MAXIMUM SETTLEMENT AMOUNT, ATTORNEY FEES AND COSTS, CLASS REPRESENTATIVE SERVICE AWARD AND PAGA ALLOCATION

The Settlement Agreement provides for a Maximum Settlement Amount ("MSA") of $12,000,000. SA ¶ 2.28. (The Amended Settlement Agreement is attached to the Declaration of

1  Shaun Setareh as Exhibit 1.) That amount is the maximum Defendant will pay unless the Escalation

2  Clause in paragraph 5.2.2 is triggered.

3      Settlement checks will be mailed directly to class members unless they opt out. SA ¶ 5.6.3.

4  After 180 days, any unclaimed funds will be distributed to the University of California Berkeley's

5  Institute for Research on Labor and Employment as a *cy pres* recipient. *Id.*, § 6.4.4.

6      Subject to court approval, the following amounts will be deducted from the MSA: Class

7  Counsel fees of $3,999,960 (33 1/3% of the MSA) and costs of up to $70,000, settlement administration

8  costs estimated to be $29,000, Plaintiff's enhancement award of $10,000, $450,000, which is 75% of

9  the $600,000 earmarked for the PAGA claims. The amount left over after these deductions is the Net

10  Settlement Fund. SA ¶ 2.29.

11      Any amounts for attorney fees, expenses, class representative service payment, or PAGA

12  allocation not approved by the Court will be reallocated to the Net Settlement Fund. SA ¶¶ 5.3, 5.4,

13  5.7.1.

14      The PAGA Settlement Fund is 5% of the MSA. SA ¶ 2.34. The PAGA Settlement Fund will

15  be divided with 75% going to the California Labor Workforce Development Agency (LWDA) and

16  25% going to the PAGA Group Members. *Id.*

17      **B.      CLASS RELEASES AND ALLOCATION**

18      The Class Period is December 3, 2017, through the date of Preliminary Approval. SA ¶ 2.6.

19  The Settlement Class is "all persons employed by Delta in non-exempt positions in California at any

20  time during the Class Period, but excluding flight attendants, pilots, and those persons who

21  participated in Delta's Enhanced Retirement or Voluntary Opt-Out Programs in 2020 and who did

22  not thereafter work for Delta in a non-exempt position in California during the Class Period." SA ¶

23  2.3.

24      The Settlement Class Members are releasing the following claims:

25      [A]ny and all claims, obligations, demands, rights, causes of action, and liabilities
       that have been asserted or that reasonably could have been asserted in the
26      Complaint, and any amendments thereto, based on the facts and/or allegations pled
       therein, arising during the Class Period. Released Class Claims include, but are not
27      limited to, claims for the failure to provide compliant meal periods and associated
       premium pay, failure to provide compliant rest periods and associated premium
28      pay, failure to pay wages, including minimum wages, straight time wages, overtime

wages, wages for vested vacation time, sick pay, and premium pay, failure to include all renumeration into the calculation of the regular rate of pay, failure to provide accurate, itemized wage statements, failure to timely pay wages during employment, failure to timely pay wages upon termination of employment, failure to maintain requisite payroll records, failure to reimburse for necessary business-related expenses, unfair or unlawful business practices pursuant to California Business and Professions Code §§ 17200, *et seq*. and 17203, any violation of the California Labor Code, including, but not limited to, California Labor Code sections 201, 202, 203, 204, 210, 215, 216, 218.6, 223, 225, 225.5, 226, 226(a), 226.7, 227.3, 246, 256, 510, 512, 516, 553, 558, 1174, 1174.5, 1175, 1182, 1194, 1194.2, 1197, 1197.1, 1198, 1199, and 2802, any violation of the Industrial Welfare Commission Wage Orders, including, but not limited to, Industrial Welfare Commission Wage Order 9-2001, any violations of local, city, and/or county laws, and/or any violations of the FLSA, including, but not limited to, 29 U.S.C. § 207 and associated regulations, including, but not limited to, 29 C.F.R. §§ 778.108, 778.109, and 778.208.  SA ¶ 2.41.

The PAGA Group Members are releasing the following claims:

[A]ll claims for civil penalties under PAGA that have been asserted or that reasonably could have been asserted in the Complaint, the LWDA Notice, and any amendments thereto, based on the facts and/or allegations pled therein, arising during the PAGA Period.  Released PAGA Claims include, but are not limited to, claims for the failure to provide compliant meal periods and associated premium pay, failure to provide compliant rest periods and associated premium pay, failure to pay wages, including minimum wages, straight time wages, overtime wages, wages for vested vacation time, sick pay, and premium pay, failure to include all renumeration into the calculation of the regular rate of pay, failure to provide compliant wage statements, failure to timely pay wages during employment, failure to timely pay wages upon termination of employment, failure to maintain requisite payroll records, failure to reimburse for necessary business-related expenses, any violation of the California Labor Code based on the aforementioned, including, but not limited to, California Labor Code sections 201, 202, 203, 204, 210, 215, 216, 218.6, 223, 225, 225.5, 226, 226(a), 226.7, 227.3, 246, 256, 510, 512, 516, 553, 558, 1174, 1174.5, 1175, 1182, 1194, 1194.2, 1197, 1197.1, 1198, 1199, and 2802, and any violation of the Industrial Welfare Commission Wage Orders, including, but not limited to, Industrial Welfare Commission Wage Order 9-2001. SA ¶ 2.42.

To determine each Class Member's Individual Settlement Share, the Settlement Administrator will multiply the Net Settlement Amount by a fraction, the numerator of which is the Class Member's individual number of Covered Class Workweeks, and the denominator of which is the total number of Covered Class Workweeks of all Class Members. SA ¶ 5.6.2.

For tax reporting purposes, the Settlement allocates 1/3 of each Class Member Settlement Amount as wages and 2/3 as penalties and interest. SA ¶ 5.6.3.

### 1.    PAGA Group

PAGA Members are all persons employed by Defendant as non-exempt employees in California at any time during the PAGA Period but excluding flight attendants and pilots. SA ¶ 2.36.

The PAGA Period is the period from June 8, 2020, through the Preliminary Approval Date. SA ¶ 2.37. The PAGA Group will receive 25% of the PAGA Settlement Fund with 75% going to the LWDA. SA ¶ 2.34.

The individual settlement shares of PAGA Group Members will be based on their covered Pay Periods worked by the PAGA Group Member during the PAGA Period.  SA ¶ 2.3.5.

For tax reporting purposes, the Settlement allocates all PAGA Group payments as penalties SA ¶ 5.7.3.

### C.    SETTLEMENT ADMINISTRATION AND NOTICE

No claim form will be required to receive a Settlement Payment. SA ¶ 5.6.1. Each Settlement Class Member and PAGA Group Member will be mailed the Settlement Notice. *Id*. ¶ 6.2.3. Class Members will have 45 days from the date of mailing the Settlement Notice to submit a Request for Exclusion or to object to the Settlement. *Id.* ¶¶ 2.3.1, 2.3.2, 6.2.8. PAGA Group Members do not have the right to opt out of the PAGA portion of the settlement. *Id*. ¶ 6.2.7. *See Amaro v. Anaheim Arena Management*, 69 Cal. App. 4th 521, 541 n. 5 (2021).

Class and PAGA Group Members may submit a dispute to the Settlement Administrator regarding their number of Covered Class Workweeks and/or Covered PAGA Pay Periods to which they have been credited shown on their Settlement Notice Document. SA ¶ 6.2.9. Settlement Class Members submitting such a challenge will be required to submit documentation, and the final decision on whether a challenge is accepted will be made by the Settlement Administrator. *Id.*

The Settlement Administrator will establish a settlement website. *Id*. ¶ 5.5.1.

### D.    DISPOSITION OF UNCASHED CHECKS AND RESERVE FUND

Settlement Class Members and PAGA Group Members will have 180 calendar days after mailing to cash their checks. SA ¶ 6.4.3, 6.4.4. Any uncashed funds remaining after the mailing of the replacement postcards will be sent to the University of California Berkeley's Institute for Research on Labor and Employment. *Id.* The Institute for Research on Labor and Employment is an interdisciplinary institute that connects world-class research with policy to improve workers' lives, communities, and society. https://irle.berkeley.edu/about/. The Institute for Research on Labor and Employment provides in-depth research and policy analysis in areas such as minimum wage policies

and labor and employment law. *Id.* "The cy pres remedy must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Nachsin v. AOL LLC,* 663 F.3d 1034, 1036 (9th Cir. 2011). Here, that standard is met— The Institute's work benefits California workers such as the class here. Class Counsel does not have a relationship with the proposed cy pres. (Setareh Decl. ¶ 45.)

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS IN THE NORTHERN DISTRICT

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

Rule 23(e) sets forth a multi-step process for determining whether a proposed class action settlement should be preliminarily approved by the Court. The parties must first "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. Proc. 23(e)(1)(A). Then, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. Proc. 23(e)(1)(B). Federal Rule of Civil Procedure 23(e)(2), in turn, provides:

> "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is ***fair, reasonable, and adequate*** after considering whether:
>> (A) the class representatives and class counsel have adequately represented the class;
>> (B) the proposal was negotiated at arm's length;
>> (C) the relief provided for the class is adequate, taking into account:
>>> (i) the costs, risks, and delay of trial and appeal;
>>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>> (iii) the terms of any proposed award of attor'ey's fees, including timing of payment; and
>>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>> (D) the proposal treats class members equitably relative to each other."

1    *Id.* (emphasis added).

2    The Ninth Circuit Court of Appeals has identified eight factors district courts may also

3    consider in evaluating the fairness and adequacy of a pending settlement: (1) the strength of the

4    plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

5    risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5)

6    the extent of discovery completed and the stage of the proceedings; (6) the experience and views of

7    counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members

8    to the proposed settlement ("*Churchill Factors*"). *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566,

9    575–76 (9th Cir. 2004).  Factors 1-4 and 6 are duplicative of the Rule 23(e) factors. As to factor 5,

10   as detailed herein there has been extensive discovery. Factor 7 is not applicable, although the LWDA

11   will receive notice of the settlement. Factor 8 will be relevant upon final approval when the class

12   will have had the opportunity to request exclusion or object.

13   **V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT**
14   **BECAUSE IT IS "FAIR, REASONABLE AND ADEQUATE" UNDER RULE 23(e)**
     **(2) AND THE *CHURCHILL* FACTORS**

15   **A.    Class Counsel and Plaintiff Adequately Represented the Class**

16   Counsel representing the class must be qualified, experienced, and capable of conducting

17   the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here,

18   Setareh Law Group is a highly experienced and skilled Plaintiff's class action firm that worked

19   efficiently and diligently to resolve the case.  Setareh Decl. ¶¶ 4-12, 35-38. Attorneys dedicated

20   many hours to this case. Setareh Decl. ¶ 39. Setareh Law Group has also incurred over $43,000  in

21   costs to prosecute the case, including expert costs of over $13,000. Setareh Decl. ¶ 41.

22   Class representatives are adequate where they have retained experienced counsel and have

23   actively participated in the litigation. *See e.g. Norton v. LVNV Funding, LLC*, No. 18-CV-05051-

24   DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021).  Here, class representative Marvin Toledo

25   is dedicated to this case and spent substantial time and resources assisting Class Counsel throughout

26   this litigation. Setareh Decl. ¶ 31.

27   **B.    The Proposal Was Negotiated at Arm's Length**

28   The proposed Settlement arises after two non-collusive mediations facilitated by renowned

mediators, including a mediator's proposal. *See* Fed. R. Civ. P. 23(e)(2)(B); *see also In re NVIDIA GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013).

###    C.    The Relief Provided for the Class Is Adequate

The relief provided for the class is adequate, taking into account:the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3) *See* Fed. R. Civ. P. 23(e) (2)(C).

###    1.    The Relief for the Claims Are Adequate, Given the Costs, Risks, and Delay of Trial and Appeal

The risks associated with this matter include, but are not limited to, the following:

(i)    The risk that Plaintiff would not be able to prove liability for alleged failure to provide compliant meal periods and rest breaks; or that to establish liability for the failure to provide compliant meal periods and rest breaks would require an individualized inquiry that would prevent these issues from being resolved on a class and/or collective basis. Plaintiff alleged employees regularly worked through their meal periods (and rest breaks) to complete their job duties within the timeframe allotted by Defendant. Defendant countered with proof that many employees took their meal periods and rest breaks, and that any inquiry into why some employees might have missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on a class basis.  Defendant states that it had compliant meal and rest policies. Defendant also argued that employees had enough downtime to take breaks at their convenience.

(ii)    The risk that Plaintiff would be unable to establish liability for alleged unpaid straight time and overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39, n. 33 (2014), (dismissing certified off-the-clock claims based on proof at trial).  Defendant has contended, for example, that Plaintiff's allegations for unpaid wages are not subject to common proof since they are based on Plaintiff's allegation that employees worked through meal breaks.  Defendant stated that it had policies prohibiting off-the-clock work and relied on employees to keep accurate time.

(iii)    The risk that Defendant's challenged employment policies and practices might not

1  ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal.4th at 14 & n.

2  28 .

3      (iv)    For the same reasons, liability, damages recovery, and certification risks are heightened

4  given:  (1) the risk that uncertainties pertaining to the ultimate legality of Defendant's policies and

5  practices could preclude class-wide awards of statutory penalties under Labor Code section 226(e); (2)

6  the risk that individual differences between settlement Class Members could be construed as pertaining

7  to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; and (3) the risk that class or

8  collective treatment could be deemed improper as to one or more claims except for settlement purposes.

9      (v)    The risk that lengthy appellate litigation could ensue as to both liability and certification

10  issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as

11  opposed to unpredictable litigation.  Setareh Decl. ¶ 18.

12      The Settlement falls well within the range of possible approval.  To evaluate this criterion, which

13  focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery

14  balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at

15  1080.  Following review of the payroll and timekeeping data provided by Defendant and applicable law,

16  Plaintiff's counsel determined that the value of their labor code claims to be approximately $40,167,647.

17  Setareh Decl., ¶ 19. If the derivative Labor Code section 203 waiting time penalties and section 226

18  inaccurate wage statement penalties are included (those are $9,723,840 and $9,710,300) the potential

19  exposure is $59,601,787. (*Id.*) However, as the Ninth Circuit has indicated, only damages not penalties

20  need be considered when assessing the fairness of a settlement because the fairness inquiry looks to

21  whether the class members were compensated for "past injuries". *Rodriguez v. West Publishing Corp.,*

22  563 F.3d 948, 964 (2009.) Further Labor Code section 203 and 226 penalties require a showing of

23  willfulness, and Defendant would argue that any failure to pay meal or rest premiums or other amounts

24  owed was not willful. For example, in *Naranjo v. Spectrum Security Services, Inc.,* 17 Cal.5[th] 1056, 1088

25  (2024) the California Supreme Court held that section 226 penalties like section 203 penalties, should

26  not be awarded even if liability is established at trial, if the employer presents defenses that were

27  "reasonable, if ultimately unconvincing."

28      The settlement amount is approximately **29.87**% of the potential $**40,167,647** class-wide Labor

Code damages estimated by Plaintiff. This is an excellent result, well above the amount of many settlements granted final approval by courts within the Ninth Circuit. *See e.g., In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) [(3%]; *In re LDK Solar Secs. Litig.*, No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages").

### 2.    The Proposed Method of Distributing Relief to the Class is Effective.

The settlement provides that class members will be mailed checks directly and will not need to submit a claim form. And for class members who do not cash their checks, the money will be sent to the *cy pres*, University of California Berkeley's Institute for Research on Labor and Employment.

### 3.    The Proposed Award of Attorney Fees is Fair.

The parties have revised the settlement agreement to remove the term that stated that Defendant will not oppose the requested attorney fees. Setareh Decl. Exh 1, SA ¶ 5.4.1. However, an agreement not to oppose a capped fee request is not collusive where, as here, the attorney fees are paid from the settlement fund, and no money from the settlement fund reverts to the defendant. In *In re Bluetooth Headsets Prods. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) the Ninth Circuit explained that one sign of potential collusion is: "when the parties negotiate a "clear sailing" agreement providing for the payment of attorneys' fees *separate and apart from class funds*, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." (Emphasis added.) Here, the fees are paid from the settlement fund, and therefore, the amount of attorney fees is directly linked to the class recovery *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948,961 n5 (9th Cir. 2009) (explaining that a "clear sailing" provision is not collusive where fees are paid from the settlement fund as opposed to separately.)

As a district court in this district has noted: "[S]o-called 'clear sailing provisions do not raise the same concerns where, as here, the fees are to come from the settlement fund.*" In re Apple iPhone/iPod Warranty Litig.*, 40 F.Supp.3d 1176, 1179 (N.D. Cal. 2014.)

The Ninth Circuit has recently explained why clear sailing provisions combined with a reverter of unawarded fees to the defendant raise concerns about collusion: "So when class counsel

and the defendant include clear sailing and reverter provisions in the settlement – they might be benefiting themselves at the expense of the class members. … [A] reverter directs the unawarded fees to be given back to the defendant instead of the class members. *Bluetooth* directs courts to be skeptical of such settlements because they hint at collusion between the class counsel and the defendant." *In re California Pizza Kitchen Data Breach Litig*., 129 F.4th 667, 676-677 (9th Cir. 2025.) Here, there is no reverter.

Further, where, as here, any unawarded fees revert to the settlement fund, settlement class members have standing to object to an award of fees if they believe it is excessive. *Briseno v. Henderson*, 998 F.3d 1014, 1027 (9th Cir. 2021.) This further undermines any inference of collusion.

Additionally, while not binding on this Court, the Los Angeles County Superior Court Model Class Action Settlement Agreement provides that: "XYZ will not oppose requests for these payments provided that do not exceed these amounts. … If the Court approves a Class Counsel Fees Payment and/or a Class Counsel Litigation Expenses Payment less than the amounts requested, the Administrator will allocate the remainder to the Net Settlement Amount." RJN Exh. 1 at 5, Model Agreement § 3.2.2. The fact that this term has been expressly approved by the Los Angeles Superior Court in its model settlement agreement further undermines any inference of collusiveness. In any event, the parties have now amended the agreement to remove the clear sailing provision, but the settlement remains non-reversionary, and any amount not awarded in fees and costs will be allocated back to the settlement fund.

In the Order Denying Preliminary Approval, the Court also asked for comparator cases in which counsel was awarded one third of the settlement amount "including at least one California case in which attorney fees were awarded at a comparable rate." Cases where counsel was awarded one third of the settlement amount in a settlement of California wage and hour claims include the following: *Haro v. Walmart, Inc*., 2025 WL 73109 *13 (E.D. Cal. 2025); *Boone v. Amazon.com Services, LLC*, 2024 WL 4172426 (E.D. Cal. 2024); *Nucci v. Rite Aid Corporation*, 2022 WL 1693711 (N.D. Cal. 2022); *Suarez v. Bank of America, N.A.,* 2024 WL 150721 (N.D. Cal. 2024); *Villafan v. Broadspectrum Downstream Services, Inc.,* 2021 WL 6332128 (N.D. Cal. 2021.) *See also Rodriguez v. Nike Retail Services, Inc*., 2022 WL 254349 *6 (N.D. Cal. 2022) (awarding 33%

1    of the settlement fund in California wage and hour case); *Harrison v. Bank of America, Corp.,* 2021

2    WL 5507175 (N.D. Cal. 2021) (awarding 30% of the settlement fund in California wage and hour

3    case).

4         Notably, the instant settlement compares favorably with all the above California wage and

5    hour settlements. In the instant settlement the $12,000,000 common fund is shared between 5000

6    class members. In the *Haro/ Walmart* settlement the $5,200,000 common fund was shared between

7    221,392 class members. *Haro supra* at *1, 3. In the *Boone/ Amazon.com* settlement the $5,500,000

8    common fund was shared between 250,000 class members. *Boone supra* at *3. In the *Nucci/ Rite*

9    *Aid* settlement the $12,000,0000 common fund was shared between 29,541 class members. *Nucci*

10   *supra* at *2. In the *Suarez/ Bank of America* settlement, the $1,890,000 common fund was shared

11   between 16,577 class members. *Suarez supra* at *1. In the *Villafan/ Broadspectrum Services*

12   settlement the $5,000,000 common fund was shared between 3,208 class members. *Villafan supra*

13   at *1-2. In the *Rodriguez/ Nike* settlement, the $8,250,000 common fund was shared between 16,635

14   class members *Rodriguez supra* at *1. In the *Harrison/ Bank of America* settlement, the $11,500,000

15   settlement fund was shared between 20,190 class members. *Harrison supra* at *1-2. Therefore, the

16   instant settlement provides more substantial relief to each individual class member than each of the

17   above settlements where between 30% and 33 1/3% in fees were awarded.

18        And district courts have also found that a request for fees of up to one third is not a reason

19   to deny preliminary approval, because while a lesser amount might ultimately be awarded, one third

20   is "within the range of acceptable attorneys' fees." *Morgan v. Rohr, Inc.,* 2025 WL 1285830 *13

21   (S.D. Cal. 2025.)

22        The Ninth Circuit "benchmark" for fees is 25% of the fund, but courts may award a higher

23   percentage when merited. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002). In

24   appropriate cases, state and federal courts applying the percentage-of-recovery method frequently

25   award 33- 1/3% of the common fund. *See, e.g., Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 66

26   n.11 (2008) (empirical studies show that California fee awards generally average around one-third

27   of the recovery).

28

Courts regularly apply a multiplier to the base lodestar to reflect the risks involved, the complexity of the litigation, the length of the case, and other relevant factors. *See Vizcaino*, 290 F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases").

In addition to the evaluation of "awards made in similar cases", the Court may consider (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the Plaintiff. See *Vizcaino supra* at 1048-50.

The contemplated 33 1/3% fee award is extremely reasonable in light of the class benefiting from the substantial risk of the claims litigated, years of hard work, exceptional results, and over $43,000 in out-of-pocket fees and expenses borne by the Plaintiff's lawyers without any guarantees of ever recovering these sums.

The novelty and challenges presented by a class and PAGA action, as well as the corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly evaluated in connection with a fee motion. *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery).

Here, Class Counsel faced significant risk in pursuing this litigation that was only overcome by their skill and experience in the field of wage & hour class actions. *See* Setareh Decl., at ¶¶ 36-38; 41-43.

Plaintiff's Counsel also clearly faced substantial risks associated with certifying this class action and prevailing at trial. These numerous risks faced by Counsel, coupled with their deft skill in keeping this litigation on course towards trial until a settlement was reached, justify the 33.3% award contemplated by the settlement agreement. *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *15 (C.D. Cal. July 21, 2008) ("Given the novel legal issues raised, the court concludes that the circumstances warrant an award" of 34%).

The fourth factor (*i.e.* "the contingent nature of the fee and the financial burden carried by the Plaintiffs) also clearly weighs in favor of the contemplated attorney fee 33.3% award. *In re Quantum Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997). Here, Class Counsel undertook

1    all of the risks of this litigation on a contingent fee basis. Setareh Decl. ¶ 41. They also faced the

2    risks involved in litigating this case for years and spending thousands of dollars in costs, without

3    any guarantee of future pay or reimbursement.

4         In addition to these hard costs, Plaintiff's Counsel committed many hours to the action. This

5    includes but is not limited to defending Plaintiff's deposition, propounding and responding to

6    written discovery, interviewing percipient witnesses, obtaining declarations from percipient

7    witnesses, reviewing documents produced by Defendant, working with Plaintiff's expert, beginning

8    to draft the motion for class certification, drafting mediation briefs and preparing extensively for

9    two mediations, and monitoring other litigation involving Defendant with potentially overlapping

10   claims.

11        Additionally, the number of attorneys and staff necessary to litigate this action constituted a

12   significant percentage of Plaintiff's Counsel's total workforce. *See* Setareh Decl. at ¶ 40. Again, all

13   of these important resources were willingly committed by Plaintiff's Counsel knowing that they

14   risked recovering nothing.

15        **D.    Class Members Will Be Treated Equitably Relative to One Another**

16        Rule 23(e)(2)(D) requires a court to determine whether the "proposal treats class members

17   equitably relative to each other." For this factor, "[m]atters of concern could include whether the

18   apportionment of relief among class members takes appropriate account of differences among their

19   claims, and whether the scope of the release may affect class members in different ways that bear

20   on the apportionment of relief." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.

21        Here, the amount of money each Class Member receives is directly proportional to the

22   number of workweeks that Class Member worked during the Class Period. SA ¶ 5.6.2. The

23   allocation to the PAGA claim will be distributed pursuant to the California Labor Code, which

24   mandates that 75% go to the California Labor and Workforce Development Agency ("LWDA"),

25   and the remaining 25% go to the PAGA aggrieved employees. SA ¶ 2.34. Pursuant to the terms of

26   the Settlement Agreement, the 25% allocation to the PAGA aggrieved employees will be distributed

27   to them pro rata based on the number of pay periods each worked during the applicable PAGA

28   period. Such a distribution is inherently just, fair and reasonable.

## VI.    THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE

### A.    Information About the Settlement.

#### 1.    Differences Between the Settlement Class and the Class Proposed in the Complaint.

The Settlement Class is narrower in that the complaint class ends when judgment is entered while the settlement class period ends on the date of preliminary approval. In reality, if a class was certified, the class definition would only include people employed as of the time of class certification. Therefore, it makes sense to end the class period as of preliminary approval.

The Court asked about identification of class members.  As the class members are current or former Delta employees, they can be readily identified from Delta's records.  Specifically, Delta maintains personnel, payroll, and timekeeping data for its current and former employees that includes information, such as hire date, termination date (if applicable), and work location, that allows for identification of all individuals who worked for Delta as non-exempt employees in California during the settlement class period.  Based on this data, through November 2024, Delta has identified approximately 4,769 employees who would be part of the proposed settlement class; hence, the 5,000 class member estimate.  Setareh Decl. ¶ 44.

In the Order Denying Preliminary Approval, the Court asked why the class definition has been narrowed. The original class definition was intended to encompass employees of staffing agencies who worked for Delta. However, through our fact investigation, counsel determined that Delta hires its employees, like Plaintiff, directly and does not use staffing agencies. Setareh Decl. ¶ 45. Thus, Plaintiff determined that he had no factual basis for maintaining a class definition that included staffing agencies. *Id.*

There is also a change in the class definition of the Settlement Class, to exclude flight attendants, pilots, and those persons who participated in Delta's Enhanced Retirement or Voluntary Opt-Out Programs in 2020 and who did not thereafter work for Delta in a non-exempt position in California during the Class Period.  SA ¶ 2.3. Flight attendants and pilots are excluded from the settlement class because they do not face the same wage and hour issues alleged in this case and thus are not similarly situated to hourly Delta employees working on the ground in California.  For

example, Delta flight attendants and pilots have unique and distinct legal and factual issues, are part of entirely different workgroups with different work rules and different pay schemes that account for the interstate nature of their work, given that they are highly mobile workers traveling around the country and world.  Thus, these Delta employees present markedly different issues than ground employees.  Rather, the complaint in this case alleges wage and hour issues that occurred for those individuals working for Delta at the airport.

Also, persons who participated in Delta's Enhanced Retirement or Voluntary Opt-Out Programs in 2020 are excluded from the settlement class because they voluntarily signed agreements with general releases of claims, including the wage and hour claims at issue in this case.

### 2.    Differences in the Claims to be Released and the Claims Pled.

The Settlement Agreement expressly releases FLSA claims, even though the pleadings do not assert an FLSA claim. Under Ninth Circuit precedent, FLSA claims based on the same factual predicate as state law wage and hour claims are released even if there is no FLSA claim pleaded in the settled lawsuit. *Rangel v. PLS Check Cashers of California Inc.*, 899 F.3d 1106, 1111 (9th Cir. 2018). By including an express release of FLSA claims, settlement class members are alerted to a consequence of the settlement that would occur anyway.

The Court in denying preliminary approval asked about release of claims that are not plead. The Settlement Agreement provides for a release of "claims, obligations, demands, rights, causes of action or liabilities that have been asserted or that reasonably could have been asserted in the Complaint, and any amendments thereto, based on the facts or allegations pled therein, arising during the Class Period." SA ¶ 2.41.

The release therefore is tied to the facts and allegations in the pleadings, as is consistent with Ninth Circuit case law regarding the effect of class action settlements on other cases. *See Reyn's Pasta Bella LLC v. Visa USA, Inc.*, 442 F.3d 741, 747 (9th Cir. 2006) (holding that class settlements can release claims that have an "identical factual predicate" with the claims asserted in the settled case.)

The distinct factual claims asserted in the First Amended Complaint are as follows: 1) Failure to Pay Hourly Wages due to off-the-clock work. ECF No. 59 ¶¶17-28. 81-102; 2) Failure to pay Hourly Wages due to failure to pay premium pay, overtime and sick pay at the regular rate of

pay (i.e. a rate that includes all non-discretionary compensation), *id.* ¶¶ 41-42, 103-107; 3) Failure to Provide Meal periods, *id.* ¶¶ 29-34, 54-69; 4) Failure to Provide Rest Periods; *id.* ¶¶ 35-40; 7-80; 5) Reimbursement for Business Expenses; *id.* ¶¶ 43-45; 109-119; 6) Failure to Pay all Earned Vacation Time, *id.*

The verdict value of those claims is as follows:

1) Failure to Pay Hourly Wages (off the clock): $9,800,000

2) Failure to Pay Hourly Wages (regular rate) $2,010,551.

3) Failure to Provide Meal Periods $12,592,932

4) Failure to Provide Rest Periods $15,464,164

5) Reimbursement for Business Expenses $300,000

6) Failure to Pay all Earned Vacation Time $0 (because Delta's policies do not provide for forfeiture of vacation pay).

Setareh Decl. ¶ 19.

The First Amended Complaint also alleges derivative claims based on these claims, and the verdict value of these claims is as follows:

1) Failure to Pay Final Wages $9,723,840

2) Wage Statement Penalties $9,710.300

3)  PAGA Civil Penalties $35,387,080

*Id.*

To the extent that any unpled claims are released, it can only be for claims that share an "identical factual predicate" with the pleaded claims. Except for the FLSA claims addressed above, Plaintiff's counsel is unaware of any claims not plead in the FAC that would be released by this Settlement.

The verdict value of FLSA claims based on the same factual predicate as the class claims is equivalent to the liability for unpaid wages. It is unlikely that a double recovery would be allowed. Under California law: "A well-established principle, applied both at law and in equity is that a plaintiff is entitled to only a single recovery for a distinct harm suffered, and double or duplicative recovery for the same harm is prohibited." *Renda v. Nevarez*, 223 Cal.App.4th 1231, 1238 (2014.) Consistently a decision from this district held that duplicative recovery under the FLSA and the

Labor Code is not permitted: "Any judgment entered in this case must reflect that [plaintiff] can only recover on either his FLSA minimum wage claim or his Labor Code minimum wage claim but not both." *Maravilla v. Rosas Brothers Construction, Inc.*, 401 F.Supp.3d 886, 903 (N.D. Cal. 2019.)

### 3. **Other Cases Affected by the Settlement**.

Plaintiff's position is that any other pending cases against Delta with the same or similar putative class/PAGA claims, of which there are only two, should have no impact on the Court's analysis of whether the proposed settlement should be approved, including whether the settlement is fair and reasonable. This action was the first-filed action among these other cases and thus maintains a class period that stretches back further than these other actions. Plaintiff's counsel has had no discussions about the proposed settlement with the plaintiff's counsel in any of the other cases discussed below.

The *Gurzenski v. Delta Air Lines, Inc.* matter, Case No. 21STCV19287 (Los Angeles Superior Court) was settled on a class and PAGA basis and covered claims for expense reimbursement and waiting time penalties from July 1, 2017 through June 8, 2023 for individuals who worked for Delta as hourly employees in Department. 120 at Los Angeles International Airport, which is a workgroup that is encompassed within the settlement proposed here. RJN Exh. 2. The *Gurzenski* settlement was granted final approval in March 2024. RJN Exh. 3. Delta fully funded the settlement, and the settlement was distributed to class members in 2024. As a result, approval of the proposed settlement in this case will have no bearing at all on the *Gurzenski* matter.

The matters of *Garnett v. Delta Air Lines, Inc.,* Los Angeles Superior Court, Case No. 24STCV01693, and *Sandhu v. Delta Air Lines*, Case No. 3:24-cv-08212-WHO (N.D. Cal.) and Los Angeles Superior Court, Case No. 24STCV32558 have both been dismissed. In the *Garnett* case, the case was filed as a PAGA only case asserting PAGA violations based on violation of Labor Code section 2802. RJN Exh. 4. The parties reached a stipulation to settle the case individually, with the PAGA claims dismissed without prejudice, which was entered by the Los Angeles Superior Court on August 13, 2024. RJN Exh. 5. In the *Sandhu* case, the case was removed to federal court, and the plaintiff voluntarily dismissed it without prejudice on March 24,

1  2025.  RJN Exh. 6.  Sandhu also filed a standalone PAGA action, which was dismissed without

2  prejudice on March 25, 2025.  RJN Exh. 7. Since Sandhu has been dismissed, there is no need for

3  filing a Notice of Pendency of Action.

4        There are two currently pending cases that likely will be affected by the proposed

5  settlement, which are: (1) *McCauley v. Delta Air Lines, Inc.*, Central District of California, Case

6  No. 2:23-cv-07079-DSF-AS (filed in March 2023) ("the *McCauley* action"); and *James Smith v.*

7  *Delta Air Lines, Inc.*, Los Angeles Superior Court, Case No. 25STCV11805 (filed in April 2025)

8  ("the *Smith* action").

9        In *McCauley v. Delta Airlines,* Central District of California Case No. 2:23-cv-07079,

10  through stipulation of the parties, the case has been stayed pending final approval of the proposed

11  settlement here. RJN Exh. 8. The class definition in the *McCauley* action overlaps with the

12  settlement class in this case. The *McCauley* class definition is:

13      All persons employed by DEFENDANT to work ramp, cargo, cabin, and other fleet

14      service positions as an hourly paid employee in California at any time during the period
    beginning four years before the filing of the initial complaint in this action and ending

15      when the court certifies the Class. For purposes of this definition, "DEFENDANT" means
    DELTA AIRLINES, INC. and any of the fictitiously named DEFENDANT (Does 1

16      through 50), which may include subsidiaries, companies owned by, or temporary

17      employment agencies affiliated with DELTA AIRLINES, INC.

18      RJN Exh. 9 at ¶ 20.

19        The operative complaint in the *McCauley* action asserts causes of action for failure to

20  provide meal periods, failure to provide rest breaks, failure to provide accurate itemized wage

21  statements, failure to pay final wages at termination, unfair business practices, and civil penalties.

22  *Id.*  Based on the parties' stipulation in the *McCauley* action, Plaintiff's counsel there agrees that

23  the claims pled in that action are fully encompassed by Plaintiff's complaint here.  *See* RJN Exh. 8

24  ("WHEREAS, the Parties have met and conferred and agree that the *Toledo* action fully

25  encompasses the claims and putative class asserted in this action.").

26        It is likely that all the claims pled in the *McCauley* action will be released in the instant

27  settlement.  As noted above, the plaintiff's counsel in *McCauley* are fully aware of this settlement

28  and stipulated to stay that case pending final approval in this case.

1    The *Smith* action was filed just over a month ago—on April 22, 2025—in Los Angeles

2   Superior Court and as of the date of this filing Delta had not yet responded to the complaint.  The

3   putative class is defined as "[a]ll current and former hourly non-exempt employees employed by

4   Defendants as direct employees as well as temporary employees employed through temp agencies

5   in California at any time from hour (4) years prior to the filing of the initial Complaint in this

6   matter through the date notice is mailed to a certified class." RJN Exh. 10. The claims pled on a

7   putative class basis in the *Smith* action are claims for minimum wage, overtime, meal/rest period

8   premium pay, failure to pay sick pay at the regular rate of pay, waiting time penalties, and an

9   unfair business competition claim.  It is likely that all the claims pled in the *Smith* action will be

10  released in the instant settlement.  Once Delta enters an appearance in the *Smith* action, Delta's

11  counsel will inform plaintiff's counsel in that case regarding this action and the pending

12  settlement.

13          **B.**      **Settlement Administration**

14          The Parties as selected Phoenix Settlement Administrators as the Settlement Administrator

15  in this case. Plaintiff obtained three bids from administrators Simpluris, ILYM Group, and Phoenix.

16  Phoenix's bid was the most comprehensive and very competitive. In Class counsel, experience,

17  Phoenix is a competent administrator who is responsive and diligent. Setareh Decl. ¶ 33. Phoenix is

18  experienced and has security procedures in place. Declaration of Michael Moore ¶¶ 2-15. Phoenix

19  has administered 7 cases with Setareh Law Group in the last 2 years and has administered 19 cases

20  with Morgan, Lewis & Bockius, LLP in the last 2 years. Id. ¶ 18.

21          **C.**      **Notice.**

22          The Notice of Settlement is Exhibit 1 to the Settlement Agreement. Consistent with section

23  3 of the Procedural Guidance, the Notice provides contact information for Class Counsel (p. 2); a

24  website address for settlement class members to obtain further information, see key documents, and

25  instructions on how to obtain further information on PACER (*Id.* at p. 7); the date and time of the

26  final approval hearing with a statement that the date may change without further notice to the class

27

28

(*Id*. at p. 1); and instructs class members to check the website or PACER to ensure the date and time of the final approval hearing have not changed. *Id*. at pp. 1, 7.

The Notice also uses the proposed language suggested in the Procedural Guidance. *Id*. at 7.

**D.     Opt Outs.**

The Notice advises class members that they can opt out by sending a written request to the administrator. It also advises them of the consequences of opting out, and sets forth information required for identification purposes including name and the last four digits of the social security number. *Id*. at p. 5.

**E.     Objections.**

The Notice advises class members of the deadline to submit objections and provides that objections are to be sent to the Court. *Id*. at p. 6.

**F.     Service Award.**

Plaintiff Marvin Toledo seeks a service award of $10,000 for the extensive time and effort he contributed to this case, without which the $12,000,000.00 Settlement would not exist. Setareh Decl. ¶ 31. Mr. Toledo has worked extensively on this case and estimates that he has put in more than 50 hours. Toledo Decl. ¶ 6. That includes talking to his counsel about Delta's practices before and after the case was filed, reviewing the Complaint and First Amended Complaint, appearing for a deposition which took more than six hours (for which he had to take time off work), reviewing written discovery requests and searching for responsive documents, being available by phone for the two mediations and providing information during those mediations, and reviewing the proposed settlement agreement and discussing it with his attorneys. *Id*. ¶¶ 12-13.

Mr. Toledo also filed the lawsuit cognizant of the risk involved in suing an employer including that future potential employers might not like it, and in fact a Google search for "Marvin Toledo" and Delta brings up multiple articles and webpages referencing this case. Toledo Decl. ¶ 13.

Multiple courts have approved $10,000 or higher incentive awards in wage and hour cases. *Brown v. Tetra Tech, Inc.,* 2025 WL 1400295 *10 (E.D. Cal. 2025) (approving $10,000 incentive awards each for three class representatives); *Suarez v. Bank of America*, 2024 WL 150721 *4 (N.D.

Cal. 2024) (approving $10,000 award to each of two class representatives);  *Alamanzar v. Home Depot USA, Inc*., 2024 WL 36175 *12-13 (approving $15,000 incentive award); (E.D. Cal. 2024); *Villafan v. Broadspectrum Downstream Services, Inc.,* 2021 WL 6332128 *8 (N.D. Cal. 2021) (approving $10,000 incentive award and collecting cases where $10,000 or more was awarded); *Jiminez v. Allstate Ins. Co*., 2021 WL 4316961 *9  (C.D. Cal. 2021) (approving $10,000 incentive award); *Walsh v. CorePower Yoga LLC*, 2017 WL 4390168 **12-13 (N.D. Cal 2017) (approving $10,000 incentive award in part due to risk in suing employer.)

It is also worth noting that the standard $5000 incentive award referred to in many cases is outdated because of inflation. *Bernstein v. Virgin America, Inc*, 2023 WL 7284158 *3 fn 1 (N.D. Cal. 2023) (observing that in the context of incentive awards: "At some point the common law will have to reckon with inflation." In 2000, the Ninth Circuit found $5000 incentive awards reasonable in a $1.75 million settlement. *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir. 2000.) According to the CPI inflation calculator, $5000 in January 2000 is equivalent to $9,502 today. https://www.bls.gov/data/inflation_calculator.htm

### G.    Class Action Fairness Act (CAFA) and Similar Requirements.

Defendant complied with the CAFA notice requirements by providing notice of the proposed settlement to the US Attorney General and appropriate state officials on December 2, 2024, and no state or federal official has objected to the settlement. Frederick Decl. ¶ 8.

On the date of filing this motion, Class Counsel uploaded a copy of this motion and the Settlement Agreement to the LWDA website. Setareh Decl. ¶ 46.  Within 14 days of filing the motion, Class Counsel will file a supplemental declaration regarding the response from the LWDA if any.

On the date of filing the previous motion Class Counsel uploaded a copy of the motion and the Settlement Agreement to the LWDA website. Grant Decl. ¶ 3. The only response for the LWDA is an email confirming receipt of the submission. *Id.* ¶ 3 and Exh. 1.

### H.    Comparable Outcome.

A comparable settlement to the instant one is *Frlekin v. Apple*, 2021 WL 6126961 (N.D. Cal. 2021), which involved similar off-the-clock claims. However, that settlement occurred after the

district court had granted summary judgment to the plaintiff class on liability, and the Ninth Circuit had affirmed that decision. Thus, *Frlekin* involved much less risk at the time of settlement. The *Frlekin* settlement involved a total settlement fund of $29.9 million for 14,683 class members. *Id.* at *2. In *Frlekin*, the gross settlement amount per class member was $2,036 ($29.9 million / 14,683.) The gross settlement amount per class member in this settlement is $2,400 ($12 million / $5,000), which is higher than the gross settlement amount per class member in *Frlekin*.

### I.    Electronic Versions.

Upon filing this motion, Class Counsel will submit Word versions of the Proposed Order and Settlement Notice.

### J.    Overlapping Cases.

Delta's counsel complied with this requirement by serving on plaintiffs' counsel in the *McCauley* and *Sandhu* actions—which were the only pending actions with putative wage and hour class/PAGA claims at the time Plaintiff filed his preliminary approval motion—a copy of the preliminary approval motion.  Frederick Decl., ¶¶ 3-4.

## VII.    THE PAGA ALLOCATION IS PROPER

PAGA provides for a $100 per employee per pay period penalty for the "initial" violation and $200 per employee per pay period for "subsequent" violations. Cal. Lab. Code § 2699(f)(2).

Theoretically, PAGA penalties could be in excess of $36 million. Setareh Decl. ¶ 18. However, it is well-settled that a PAGA penalty award should be proportionate to the underlying damages. *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1214 (2008): "The penalty award which totaled less than one-third of plaintiff's $804,783 damage award, was also proportional to Cintas's misconduct."

The Agreement provides for a PAGA allocation of $600,000, of which 75% will be paid to the LWDA out of the gross settlement amount, and the remaining 25% will be distributed to PAGA Group Members. (SA ¶ 5.7.1).

Admittedly, the PAGA allocation is a small percentage of the possible exposure (1.64% of what might be awarded). However, Plaintiff submits that is permissible in this case because the settlement of the underlying wage and hour claims is robust, and that serves the deterrent purpose of the PAGA statute.  *O'Connor v. Uber Technologies, Inc.*, 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016):

"By providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of class members as employees but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA."

Courts have routinely approved similar PAGA allocations. *Viceral v. Mistras Group, Inc.*, 2016 WL5907869 (N.D. Cal. 2016) (0.15%); *Saechao v. Landrys, Inc.*, 2016 WL 3227180, *3 (N.D. Cal. June 11, 2016) (approving settlement of PAGA claim for $12,000, or 1.3% of the estimated total PAGA value of $921,000, according to the plaintiff's expert).

This is because trial courts have broad discretion to reduce the amount of PAGA penalties if the award would be: "unjust, arbitrary and oppressive or confiscatory." Cal. Lab. Code § 2699(e)(2).

And, in this case there is justification for a PAGA allocation which is a fraction of the potential exposure.

In the Order Denying Preliminary Approval, the Court asked for settlements in which the PAGA allocation was a similar proportion of the class settlement fund. Here, the PAGA allocation is 5% of the settlement fund. In *Morgan supra* at *2 (S.D. Cal. 2025) the PAGA allocation was $500,000 and the total settlement fund was $19,000,000. The district court approved the PAGA allocation which was 2.63% of the settlement fund. *Id.* *15. *See also,* *Boone v. Amazon.com Services, LLC,* 2024 WL 4712426 *17 (E.D. Cal. 2024) (approving PAGA allocation of $100,000 which was 1.8% of the $5,500,000 settlement fund); *Sales v. United Road Services Inc.*, 2024 WL 4177937 *3 (N.D. Cal. 2024) (approving PAGA allocation of $126,325 which was 1.6 % of $7.5 million settlement fund); *Dimercurio v. Equilon Enterprises, LLC*, 2022 WL 17669711 *6 (N.D. Cal. 2022) (approving PAGA allocation which was 1.6% of settlement fund); *Castro v. Paragon Industries, Inc.,* 2020 WL 1984240 *15 (E.D. Cal. 2020) (2% of settlement fund); *Slavkov v. Fast Water Heater Partners* I, LP, 2017 WL 3834873 *2 (N.D. Cal. 2017) (approving PAGA allocation of 2.2% of settlement fund.) Therefore, the 5% PAGA allocation is well within the range that has been approved by district court's when the settlement is a combined class and PAGA settlement, and in fact exceeds what has been approved in many cases.

Courts often use their discretion to significantly reduce PAGA penalties. *See, e.g.*, *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) (reducing PAGA penalties by 95%); *Fleming v. Covidien, Inc.*, 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011) (reducing penalty award by 82%);

*Aguirre v. Genesis Logistics*, 2013 WL 10936035, at *2-3 (C.D. Cal. Dec. 30, 2013) (reducing penalty award by 72%)."

Therefore, under the *O'Connor* "sliding scale" approach the PAGA settlement is reasonable. The settlement of the underlying wage claims is robust, providing meaningful compensation to employees. Further, while PAGA claims are not subject to class certification, a court has some discretion to limit the PAGA case that can be presented at trial which can result in a situation where despite alleged widespread violations "the punishment assessed [is] minimal". *Estrada v. Royalty Carpet Mills,* 15 Cal.5th 582, 619 (2024). Not only do the PAGA claims face the same risks as the class claims, but the PAGA claims face the additional risk of a substantial discount on the amount of PAGA penalties.

Further, the prior motion for preliminary approval was uploaded to the PAGA website on November 22, 2024. Grant Decl. ¶ 3. The LWDA acknowledged receipt in an email on November 22, 2023. Id. Ex 1. The LWDA has not indicated any objection to the PAGA allocation. *Id.* ¶3. This weighs in favor of finding that the PAGA allocation is reasonable. *Moreno v. Capital Building Maintenance & Cleaning Services, Inc.*, 2021 WL 1788447 *8 (N.D. Cal. 2021): "The lack of comment from the LWDA weights in favor of a finding that the PAGA settlement is reasonable."

## VIII. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS, AND APPOINT PLAINTIFF AND CLASS COUNSEL TO REPRESENT THEM

### A. The Class Should Be Conditionally Certified For Purposes of Settlement

#### 1. Standard for Conditional Class Certification Upon Settlement

Parties seeking class certification for settlement purposes must still generally satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To maintain a class action under Rule 23(a), a plaintiff must demonstrate: (1) numerosity: the class is so numerous that joinder of all members is impracticable, (2) adequacy of representation: the representative parties will fairly and adequately protect the interests of the class, (3) typicality: the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) commonality: there are questions of law or fact common to the class. In addition to these requirements, a plaintiff must satisfy one of the Rule 23(b) prongs to maintain a class action. Under Rule 23(b)(3), the plaintiff must prove: "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action

is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 2. Numerosity

To satisfy the numerosity requirement under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable". *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008).

Here, the estimated count of approximately 5,000 Class Members satisfies the numerosity requirement. Setareh Decl., ¶ 44.

### 3. Adequacy of Representation

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiff has the same interests as the Settlement Class, there is no conflict between Plaintiff's claims and those of the other Class Members, and Plaintiff is represented by experienced and competent counsel who have substantial experience in litigating wage-and-hour class actions and who have no known conflict of interest with absent Settlement Class Members. (Setareh Decl., ¶¶ 35-38.)

### 4. Typicality

Rule 23(a) likewise requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent Class Members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff's claims are essentially identical to all other non-exempt employees as described in the class provided in the Settlement and Plaintiff's claims are typical of such workers with the same common issues. Setareh Decl., ¶ 22.

### 5. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon*, 150 F.3d at 1019. Here, Plaintiff's claims involve common questions of both

fact and law regarding Defendant's alleged failure to abide by wage-and-hour law. Setareh Decl., ¶¶ 23-24.

### 6.    Predominance and Superiority

Here, "questions of law or fact common to class members predominate over any questions affecting only individual members, and…a class action is superior to other available methods for fairly and efficiently adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Setareh Decl., ¶¶ 24-26. For settlement purposes common issues regarding the legality of Delta's wage and hour practices predominate over any individualized issues. And, given the small size of any individual claims, class treatment is plainly superior to individual adjudication.

## IX.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant the motion for preliminary approval in its entirety.

DATED:  June 2, 2025                      **SETAREH LAW GROUP**

                                          */s/ Shaun Setareh*
                                          SHAUN SETAREH
                                          THOMAS SEGAL
                                          FARRAH GRANT
                                          Attorneys for Plaintiff

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT