UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARVIN TOLEDO,

          Plaintiff,

    v.

DELTA AIR LINES, INC.,

          Defendant.

Case No.  22-cv-00081-AMO

**ORDER AWARDING ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARDS**

Re: Dkt. No. 77

On February 26, 2026, this Court held a Final Approval Hearing to determine whether the terms and conditions of the Class Action Settlement Agreement and Release ("Settlement") agreed to by Plaintiff Marvin Toledo and Defendant Delta Air Lines, Inc. ("Delta") should be approved by the Court.  At the Final Approval Hearing, the Court also considered Plaintiffs' motion for attorney's fees and costs, class representative enhancements, and settlement administrator's expenses.  Having read the unopposed papers filed by Plaintiffs and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** the requests in part for the following reasons.

## I.    DISCUSSION

For purposes of this Order, the Court assumes familiarity with the factual and procedural background of this wage and hour class action, including the Court's preliminary approval of a $12 million common fund settlement reached prior to class certification.  *See* Dkt. No. 74.  The Court takes up Plaintiffs' requests for an award of costs, incentive awards, and attorney's fees in turn.

United States District Court
Northern District of California

**A.      Costs Awards**

Plaintiffs seek to deduct two forms of costs from the common settlement fund: litigation costs incurred by counsel and settlement administration costs.

**1.      Litigation Costs**

Class counsel may recover reasonable out-of-pocket expenses.  Fed. R. Civ. P. 23(h). Reasonable out-of-pocket litigation expenses are those that "would normally be charged to a fee paying client." *Trs. of the Const. Indus. and Laborers Health and Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006).  "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Rutti v. Lojack Corp., Inc.*, No. SACV 06-350 DOC, 2012 WL 3151077, *12 (C.D. Cal. July 31, 2012). "Courts also have discretion to reimburse consulting and expert witness fees." *Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCX), 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017).

Here, class counsel incurred $47,274.12 in costs, including expenditures for Plaintiff's experts, mediation fees, deposition fees and filling fees.  Setareh Decl.  ¶17.  The Court finds the litigation expenses incurred to be reasonable, and the Court accordingly grants counsel's request to recover litigation costs.

**2.      Settlement Administration Costs**

Courts regularly award costs associated with the administration of class settlements, including notice and payment. *See Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 17722395, at *11 (N.D. Cal. Dec. 15, 2022) (citing *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015)).  As set forth in the Lee Declaration, the total costs incurred and anticipated to be incurred by Phoenix Settlement Administrators ("Phoenix") for the notice and settlement administration process are $29,000.00.  Lee Decl. ¶ 17.  The Court concludes that the settlement administrator's costs were reasonably incurred for the benefit of the class and approves the full amount to be deducted from the common settlement fund.  Accordingly, the

2

Court grants payment to Phoenix, a necessary third-party for handling of the notice and settlement payment process, in the amount of $29,000.00.

**B.     Incentive Award**

Plaintiff requests a service payment of $10,000 to named Plaintiff Marvin Toledo. *See* Dkt. No. 77 at 26. "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (citations omitted). Incentive awards are discretionary and meant to compensate a class representative "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). District courts must carefully scrutinize the reasonableness of a proposed incentive award by analyzing factors including, "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citations and quotations omitted). "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe*, 715 F.3d 1157, 1164 (9th Cir. 2013). Service awards of $5,000 are considered "presumptively reasonable" in this district. *Nevarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1048 (N.D. Cal. 2020). "Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (citing *Rodriguez*, 563 F.3d at 958-59).

Here, Plaintiff acknowledges this District's historically, presumptively reasonable service award is $5,000 but argues that the figure is outdated as a result of inflation. *See* Dkt. No. 77 at 27 (citing *Bernstein v. Virgin Am., Inc.*, No. 15-CV-02277-JST, 2023 WL 7284158, at *3 n.1 (N.D. Cal. Nov. 3, 2023)). Further, Toledo declares that he devoted significant time and effort to serving as a class representative, including by reviewing legal filings, participating in written discovery, preparing and sitting for a deposition, and remaining available by phone during the mediation

United States District Court
Northern District of California

session.  Toledo Decl. (Dkt. No. 77-2) ¶¶ 6-12.  The Court finds that a substantial incentive award is appropriate here in light of the time and effort Toledo expended for the benefit of the class, including the risk to his employment in the airline industry, as well as the risks associated with initiating the litigation and representing the class.  The Court will therefore grant Plaintiff's request for an incentive award of $10,000.

### C.     Attorney's Fees

Class counsel seeks an attorney fee award of 33.33% of the common fund, a sum of $3,999,960.  *See* Dkt. No. 77 at 12.  Attorney's fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h).  To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  Courts analyze an attorney's fee request "based on either the 'lodestar' method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief."  *In re Apple Inc. Sec. Litig.*, No. 4:19-CV-02033-YGR, 2024 WL 4246282, at *5 (N.D. Cal. Sept. 18, 2024).  The Ninth Circuit encourages courts to calculate attorney's fees under both methods in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-1052 (9th Cir. 2002)).  Therefore, the Court analyzes class counsel's requested attorney's fees under the percentage-of-recovery method and cross-checks with the lodestar method to ensure reasonableness.

### 1.     *Viscaino* Factors

When using the percentage-of-recovery method, courts consider a number of factors, but the determination of an appropriate percentage requires careful consideration of all of the circumstances of a case.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).  The Ninth Circuit has characterized 25% of a common fund as the "benchmark" for the analysis and simultaneously noted that 25% may not be fitting in all cases.  *Vizcaino*, 290 F.3d at 1047-48.  Courts should deviate from the benchmark when it would be "either too small or too

4

large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Where district courts depart from the 25% benchmark rate, they must provide "adequate explanation in the record of any 'special circumstances.' " *In re Bluetooth*, 654 F.3d at 942.  In the end, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.  The Ninth Circuit has identified five factors which may be probative: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.  *See id.* at 1048-50.

Here, Plaintiffs seek an upward departure to 33.33% of the common fund for a total of $3,999,960 in attorney's fees.  Dkt. No. 77 at 12.  At final approval hearing, when asked to explain why they were seeking the upward departure, Plaintiffs' counsel asserted the results achieved and the risk, without further explanation.  The Court takes up the *Vizcaino* factors in turn to assess whether such a significant upward adjustment is appropriate.

<strong>a.      The Results Achieved</strong>

First, the Court considers the overall result and benefit to the Class.  This factor is "the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that "the most critical factor" in determining the reasonableness of an attorneys' fees request is "the degree of success obtained").

The proposed settlement provides a gross non-reversionary settlement amount of $12,000,000 to approximately 4,762 class members.  Dkt. No. 78 at 8.  At the time of the filing of the motion for preliminary approval, the average net class member award was expected to be approximately $1,488.20.  Dkt. No. 64 at 11.  The monetary recovery represents a significant result for the class members.

<strong>b.      The Risks of Litigation</strong>

The Ninth Circuit recognizes that risk is an important factor in determining a reasonable fee award.  *See In re Omnivision*, 559 F. Supp. 2d at 1046-47 ("The risk that further litigation

5

might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."). Courts should not only consider the recovery obtained for the class, but also the risks taken by class counsel in pursuing litigation. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (holding fees justified "because of the complexity of the issues and risks."). Uncertainty is relevant in determining risk. *See Vizcaino*, 290 F.3d at 1048.

Here, class counsel certainly undertook risk because of the complexity of issues and uncertainty of recovery. *See, e.g.*, Setareh Decl. ¶¶ 14-16 (identifying procedural and substantive risks to classwide success). The risks involved certification issues, pleading and proof issues, motion practice, and prevailing at trial. *Id.* Accordingly, class counsel's risk, combined with the significant result achieved on behalf of the class, supports the requested fees.

**c.     The Skill Required and the Quality of the Work**

The skill of counsel is a relevant factor to consider when awarding attorney's fees. *See In re Omnivision*, 559 F. Supp. 2d at 1047. Here, class counsel attest that they have extensive experience in class action litigation. *See* Setareh Decl. (Dkt. No. 77-1) ¶¶ 18-27. Class counsel tout their experience as class-action litigators, having litigated more than 100 class actions and having been appointed class counsel in several of those cases. *Id.* ¶ 20. In addition to their experience, class counsel attest that they committed significant work to the case, including "communicating with Plaintiff, drafting pleadings, defending Plaintiff's deposition, propounding and responding to written discovery, interviewing percipient witnesses, obtaining declarations to be used in support of class certification, reviewing hundreds of pages of documents produced by Defendant, beginning to draft the motion for class certification, working with Plaintiff's experts, drafting mediation briefs and preparing for the two mediations, monitoring other litigation involving Defendant with potentially overlapping claims, and working on preliminary approval and the instant motion." Dkt. No. 77 at 17 (citing Setareh Decl. ¶ 28). These activities, conducted over the course of nearly four years of active litigation, do not reflect a high level of skill or a superlative level of effort on the part of class counsel. Such activities instead represent the standard fare of litigation conduct in a case not vigorously contested through discovery or motions

6

United States District Court
Northern District of California

practice.  Counsel cannot even claim to have worked diligently on the case where, after initially receiving a case schedule in May 2022, they sought three extensions of the deadline to seek class certification.  *See* Dkt. Nos. 22, 36, 41, 44.  Counsel also submitted an initial motion for preliminary approval that failed to address several considerations foundational to the settlement assessment required under Rule 23(e), demonstrating less-than-stellar quality of attorney work.  *See* Dkt. No. 57 (initial motion for preliminary approval of class settlement); Dkt. No. 63 (order denying preliminary approval).  Further, and as noted below, the Court cannot discern what effort counsel committed to the case because the sole declaration in support of an award of attorney's fees lacks any supporting time records detailing attorney time expended.  *See* Setareh Decl. ¶ 29.  The failure to provide any time records in support of a motion for attorney's fees seeking $3,999,960 severely undermines counsel's claim that the skill required and quality of the work merits an upward departure to one-third of the common fund.  This factor does not support class counsel's requested upward departure from the 25% benchmark.  Rather, the 25% benchmark proves too large in light of the quality of the work.  *See Six (6) Mexican Workers*, 904 F.2d at 1311.

### d.    The Contingent Nature of the Representation

A determination of an attorney's fee award must also include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement.  *See In re Omnivision*, 559 F. Supp. 2d at 1047.  "The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."  *Id.*  "[A]ttorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose."  *Vizcaino*, 290 F.3d at 1051.

Here, the contingent nature of this action supports a significant fee award for counsel.  Class counsel have litigated this case for over four years on a contingency basis assuming significant risk of no recovery at all.

7

#### e.      Awards in Similar Cases

In applying the percentage-of-recovery method, a court should assess fee awards in similar cases.  *See Vizcaino*, 290 F.3d at 1049-50.  Plaintiff here identifies a handful of wage and hour cases in which California district courts awarded one-third of the common-fund settlement amount in attorney's fees.  *See* Dkt. No. 77 at 21 (citing *Haro v. Walmart, Inc.*, No. 1:21-CV-00239-KES-SKO, 2025 WL 73109, at *13 (E.D. Cal. Jan. 10, 2025); *Boone v. Amazon.com Servs., LLC*, No. 1:21-CV-00241-KES-BAM, 2024 WL 4712426, at *18-19 (E.D. Cal. Nov. 7, 2024); *Nucci v. Rite Aid Corp.*, No. 19-CV-01434-LB, 2022 WL 1693711, at *7 (N.D. Cal. May 26, 2022); *Suarez v. Bank of Am., Nat'l Ass'n*, No. 18-CV-01202-LB, 2024 WL 150721, at *3 (N.D. Cal. Jan. 11, 2024); *Villafan v. Broadspectrum Downstream Servs., Inc.*, No. 18-CV-06741-LB, 2021 WL 6332128, at *9 (N.D. Cal. Apr. 8, 2021); *Rodriguez v. Nike Retail Servs., Inc.*, No. 14-CV-01508-BLF, 2022 WL 254349, at *6 (N.D. Cal. Jan. 27, 2022); *Harrison v. Bank of Am. Corp.*, No. 19-CV-00316-LB, 2021 WL 5507175, at *9 (N.D. Cal. Nov. 24, 2021)).  The cases cited fail to persuade the Court that a percentage award above the 25% benchmark is appropriate in this case. In *Haro v. Walmart* and *Boone v. Amazon.com Services*, for example, counsel received percentage awards above the benchmark based in part on the excellent recovery of 98% and 100% of class members' allegedly-owed damages.  *Haro*, 2025 WL 73109, at *13; *Boone*, 2024 WL 4712426, at *18.  Such high levels of recovery did not occur here, as the settlement amount represents 29.87% of the estimated $40,167,647 class-wide damages.  *See* Dkt. No. 64 at 20-21.  *Suarez v. Bank of America* and *Villafan v. Broadspectrum Downstream Services* are similarly poor comparators to the requested recovery here because those courts determined that attorney fee awards of 33% were appropriate in light of the relatively "small" common fund obtained by counsel – $1.89 million in *Suarez* and $5 million in *Villafan*.  *See Suarez*, 2024 WL 150721, at *3 (noting "a negative lodestar multiplier"); *Villafan*, 2021 WL 6332128, at *9 (awarding one third of the common fund based in part on "the small settlement fund").  The comparator cases offered by class counsel ultimately confirm that a heightened award is unwarranted.

### f.      *Vizcaino* Factors Conclusion

Taking all these factors together, and recognizing the significant award earned on behalf of the class, the Court concludes that class counsel has not established that they are entitled to an award of 33% of the common fund.  While class counsel achieved strong results for class members and represented them on a contingency basis, the Court does not find that counsel's work in this case merits an attorney's fee award greater than the benchmark of 25% of the common fund.  The Court, to the contrary, finds that the *Viscaino* factors establish that the 25% benchmark would constitute an award too large, particularly in light of the quality of counsel's work, and 20% of the common fund represents an appropriate attorney fee award in this case.

### 2.      Lodestar Cross-Check

The Court now compares the benchmark amount to the lodestar, as calculation of this amount, "which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."  *Vizcaino*, 290 F.3d at 1050.  "[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate."  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016).  The Court takes up these two elements of reasonable hourly rates and reasonable hours expended in turn before crunching the numbers.

### a.      Reasonable Rate

"The first step in the lodestar analysis requires the court to determine a reasonable hourly rate for the fee applicant's services."  *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1167 (N.D. Cal. 2012) (internal quotation marks and citation omitted).  "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015) (internal quotation marks omitted); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("prevailing market rate" is "normally deemed to be reasonable").  "[T]he relevant community is the forum in which the district court sits."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

United States District Court
Northern District of California

community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citation omitted).

Here, Attorney Shaun Setareh submits a declaration in support of the motion for attorney's fees and declares hourly rates for attorneys at his law firm, listing $1,150 per hour for himself, $950 per hour for Thomas Segal, $650 per hour for Farrah Grant, $325 per hour for Tyson Gibb, $250 per hour for Brian Louis, and $250 per hour for Rehatjit Kaur. Setareh Decl. ¶ 29. Setareh cites one case for the premise that these reflect standard hourly rates for "experienced class action lawyers who practice on a national scale." *See id.* ¶ 31 (citing *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016)). Setareh also cites the Laffey Matrix, a survey of rates approved in the Washington/Baltimore legal market. Setareh Decl. ¶ 31. The Court finds these sources unhelpful in assessing the reasonableness of class counsel's claimed hourly rates because they do not relate to the relevant community, nor do they reflect rate determinations found reasonable and actually awarded to these lawyers by another court.[1] *Cf. United Steelworkers*, 896 F.2d at 407. Indeed, while counsel's declaration identifies several cases in which Setareh Law Group has been appointed class counsel in both state and federal courts, the motion and supporting papers do not identify any case approving counsel's requested hourly rates. *See* Setareh Decl. ¶ 20. Accordingly, the Courts lacks any basis on which to credit the hourly rates counsel asserts.

The Court thus looks to hourly rates approved by other judges presiding over similar cases in the Northern District. In one recent case, the court found rates ranging from $575 to $1,495 per hour within the range of rates approved in wage and hour litigation in this district, particularly where those hourly rates were supported by counsel's demonstration that they had been awarded such rates in similar cases. *Koeppen v. Carvana, LLC*, No. 21-cv-01951-TSH, 2024 WL 3925703,

---

[1] The Laffey matrix itself holds limited significance to rates in this District. As others acknowledge, "[t]he Ninth Circuit has questioned the relevance of the Laffey matrix to determining a reasonable rate in the Bay Area." *J & J Sports Prods., Inc. v. Ortiz*, No. 12-CV-05766-LHK, 2014 WL 1266267, at *3 n. 1 (N.D. Cal. Mar. 24, 2014) (citing *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)).

United States District Court
Northern District of California

at *12-13 (N.D. Cal. Aug. 22, 2024).  Even more recently, the court approved rates ranging from $475 to $550 for associates, and $625 to $950 for senior counsel and partners in a wage and hour class action.  *Rodriguez v. Belfor USA Grp., Inc.*, No. 22-CV-02071-VKD, 2025 WL 2899211, at *12 (N.D. Cal. Oct. 9, 2025).  The instant case is more like *Rodriguez* and less like *Koeppen* in light of class counsel's failure to substantiate the reasonableness of their hourly rates via citation to a case in which they received the requested rates.  The Court therefore finds rates ranging from $625 to $950 for the senior counsel and partners in this wage and hour class action to be reasonable, and it finds the rates requested for more junior attorneys to be reasonable.  Thus, instead of the unsubstantiated $1,150 per hour sought by Setareh, the Court finds $900 per hour to be reasonable; instead of the unsubstantiated $950 per hour sought by Segal, the Court finds $750 per hour to be reasonable; and the Court otherwise finds to be reasonable the requested rates of $650 per hour for Farrah Grant, $325 per hour for Tyson Gibb, $250 per hour for Brian Louis, and $250 per hour for Rehatjit Kaur.  The Court will impose these rates to calculate the lodestar.

### b.     Reasonable Hours

"Having recommended the billing rates, the court turns to the second component of the lodestar calculation: ascertaining the number of hours reasonably expended litigating this matter."  *Cotton*, 889 F. Supp. 2d at 1175-76.  The party moving for attorney's fees bears the burden of providing the Court with a detailed account of the hours spent litigating the case.  *Hensley*, 461 U.S. at 433.  Courts may exclude any hours not reasonably expended for being "excessive, redundant, or otherwise unnecessary."  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 434); *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (noting that the requested hours "may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary.").  At the same time, the Supreme Court has instructed:

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

11

*Fox v. Vice*, 563 U.S. 826, 838 (2011).  Consistent with this balanced approach and with an eye towards eliminating inefficiencies, the Court may use its discretion to give the fee award a 10% "haircut" across the board "without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Applying these precepts, the Court finds it appropriate to make certain adjustments to the claimed hours.

Here, Setareh certifies in a chart that he expended 650 hours on this case, Segal expended 730 hours on the case, Grant expended 138.3 hours on the case, Gibb expended 8.3 hours on the case, Louis expended 2.6 hours on the case, and Kaur expended 1.5 hours on the case.  Setareh Decl. ¶ 29.  Overall, the 1,530.7 hours claimed by the Setareh Law Group falls in line with hour totals found reasonable in other cases.  *See Haro*, 2025 WL 73109, at *14 (finding 1,680 hours a reasonable sum over the course of a three-year class action); *Boone*, 2024 WL 4712426, at *20 (finding 1,510.7 a reasonable sum of hours in a three-year class action).  But Setareh provides no time records beyond the chart in his declaration, and none of counsel's claimed hours are supported by any descriptions of counsel's tasks.  The absence of any real time records does not support the reasonableness of the time expended by counsel on the case.  Moreover, Setareh fails to indicate that he has exercised reasonable billing judgment or that he in any way reviewed his and his co-counsels' billing records to ensure there was no duplication of effort in the four years they litigated this case.  To account for these omissions, the Court cuts 25% of counsel's hours.

//

//

//

//

//

//

United States District Court
Northern District of California

### c.   Calculation and Multiplier

Based on the figures reached in the preceding discussion, the Court calculates the lodestar as follows:

|  | Adjusted Hourly Rate | Reasonable Time (after 25% cut) | Total |
|---|---|---|---|
| Setareh | $900 | 487.5 | $438,750 |
| Segal | $750 | 547.5 | $410,625 |
| Grant | $650 | 103.5 | $67,275 |
| Gibb | $325 | 6.2 | $2,015 |
| Louis | $250 | 2 | $500 |
| Kaur | $250 | 1.1 | $275 |
|  |  |  | **$ 919,440** |

Generally, there is a "strong presumption that the lodestar," absent a multiplier, is sufficient. *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546-52 (2010)).  Indeed, adjustments are reserved only for "rare and exceptional circumstances." *Chambers*, 980 F.3d at 665.  Such rare circumstances include where an attorney engages in superior performance shown to achieve results "more favorable than would have been predicted based on governing law and the available evidence," an upward calculation can be appropriate. *Perdue*, 559 U.S. at 554.

In appropriate cases, the Ninth Circuit has recognized that multipliers generally range from one to four. *Vizcaino*, 290 F.3d at 1051 n.6.  District courts within the Ninth Circuit commonly apply multipliers in that range in California wage and hour class actions. *See, e.g.*, *Kulik v. NMCI Med. Clinic Inc.*, No. 21-CV-03495-BLF, 2023 WL 2503539, at *9 (N.D. Cal. Mar. 13, 2023) (applying a multiplier of 1.83); *Uschold v. NSMG Shared Servs., LLC*, No. 18-cv-01039-JSC, 2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020) (applying a multiplier of 4); *De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725-JSC, 2020 WL 1531331, at *17-18 (N.D. Cal. Mar. 31, 2020)

(applying a multiplier of 1.09); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 999 (N.D. Cal. 2017) (applying a multiplier of 2.0).

Here, a multiplier of approximately 2.5 is calculated by dividing $2,262,745.18, the calculation of 20% of the common fund after reducing the PAGA settlement amount, litigation costs, settlement administration costs, and Toledo's incentive award, by the lodestar of $919,440. Given the results achieved for the class and the risk counsel faced, applying a multiplier of 2.5 to the lodestar is reasonable here. This multiplier recognizes the result achieved on behalf of the class while ensuring counsel's recovery remains commensurate with the skill required and quality of their work. Indeed, a 2.5 multiplier almost precisely matches the 2.6 multiplier requested by counsel. *See* Dkt. No. 77 at 24.

In sum, after reviewing the motion for awards, the supporting documents, and the relevant portions of the record, the Court finds an attorney's fee award of 20% of the settlement fund ($2,262,745.18) is fair and reasonable in light of all relevant factors including the risks involved, the results obtained, the contingent nature of the litigation, and the skill level demonstrated by counsel. *See Vizcaino*, 290 F.3d at 1048-50.

## II.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for attorney's fees, costs, and incentive awards as follows:

- Class counsel is awarded $2,262,745.18 in attorney's fees from the common fund and $47,274.12 in costs;
- Phoenix Settlement Administrators is awarded $29,000 for the cost of its settlement administration services; and
- Named Plaintiff Marvin Toledo is awarded $10,000 for his service to the class.

    **IT IS SO ORDERED.**

Dated: March 2, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

14